**UNITED STATES of America, Plaintiff,**

v.

**Joseph Patrick Thomas DOHERTY, Defendant.**

**No. 85 Civ. 935–CSH.**

United States District Court, S.D. New York.

June 25, 1985.

Rudolph W. Giuliani, U.S. Atty., New York City, for United States; Thomas E. Moseley, Asst. U.S. Atty., New York City, of counsel.

Somerstein & Pike, New York City, for defendant; Mary Boresz Pike, New York City, of counsel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

In this action the United States, on behalf of the Government of the United Kingdom of Great Britain and Northern Ireland ("U.K."), seeks by the vehicle of declarato-ry judgment a collateral review of an order denying extradition.

The U.K. sought the extradition from the United States of defendant Joseph Patrick Thomas Doherty. It based that extradition request upon Doherty's conviction in Northern Ireland for murder, attempted murder, alleged possession of firearms and ammunition, and other crimes. The matter came before District Judge John E. Sprizzo of this Court, sitting as an "extradition magistrate," *First National City Bank of New York v. Aristeguieta*, 287 F.2d 219, 220 (2d Cir.1960), *vacated as moot*, 375 U.S. 49, 84 S.Ct. 144, 11 L.Ed.2d 106 (1963), pursuant to 18 U.S.C. § 3184.[1] Judge Sprizzo refused to certify Doherty to the Secretary of State for extradition. *Matter of Doherty by Government of United Kingdom*, 599 F.Supp. 270 (S.D.N.Y.1984). Finding that Doherty committed the underlying acts as a member of the Provisional Irish Republican Army ("PIRA"), Judge Sprizzo concluded that Doherty's extradition was barred by the "political offense" exception contained in the relevant extradition treaty.[2]

The U.K. was dissatisfied with that result. But it did not appeal Judge Sprizzo's order, unquestionably because grants or denials of requests for extradition are not appealable by either party under federal

---

1. The statute provides:

   "Whenever there is a treaty or convention for extradition between the United States and any foreign government, any justice or judge of the United States, or any magistrate authorized so to do by a court of the United States, or any judge of a court of record of general jurisdiction of any State, may, upon complaint made under oath, charging any person found within his jurisdiction, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention, issue his warrant for the apprehension of the person so charged, that he may be brought before such justice, judge, or magistrate, to the end that the evidence of criminality may be heard and considered. If, on such hearing, he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, he shall certify the same, together with a copy of all the testimony taken before him, to the Secretary of State, that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the stipulations of the treaty or convention; and he shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made."

2. Treaty of Extradition between the United States of America and the United Kingdom of Great Britain and Northern Ireland, 28 U.S.T. 227, T.I.A.S. No. 8468 (effective January 21, 1977). Article V(1)(c)(i) provides in pertinent part:

   "(1) Extradition shall not be granted if: * * * (c)(i) the offense for which extradition is requested is regarded by the requested Party as one of a political character;..."

law. *Matter of Mackin,* 668 F.2d 122 (2d Cir.1981).

The proposed extraditee Mackin, like Doherty a PIRA member, was sought for extradition by the U.K. under circumstances identical to those at bar. Following a magistrate's decision denying the request, the United States on behalf of the U.K. took an appeal, which the Second Circuit dismissed for lack of appellate jurisdiction.

In *Mackin* Judge Friendly wrote, during the course of a comprehensive and scholarly opinion:

> "The extraditee may seek a writ of *habeas corpus,* the denial or grant of which is appealable, see note 8, *supra,* and the requesting party may refile the extradition request. *Collins v. Loisel,* 262 U.S. 426, 43 S.Ct. 618, 67 L.Ed. 1062 (1923); *Hooker v. Klein, supra,* 573 F.2d [1360] at 1365–66 [9th Cir.1978]; *In re Gonzalez,* 217 F.Supp. 717 (S.D.N.Y.1963); *Ex parte Schorer,* 195 F. 334 (E.D.Wis. 1912). Both these remedies are inconsistent with the notion that the original orders were appealable. If the grant of

a request were appealable, *habeas corpus* would not lie since that writ cannot be used as a substitute for an appeal. *Stone v. Powell,* 428 U.S. 465, 477 n. 10, 96 S.Ct. 3037, 3044 n. 10, 49 L.Ed.2d 1067 (1976); *Sunal v. Large,* 332 U.S. 174, 178–79, 67 S.Ct. 1588, 1590–91, 91 L.Ed. 1982 (1947). If denial of a request were appealable, a second request would ordinarily be defeated by the principle of *res judicata.* See *Hooker v. Klein, supra,* 573 F.2d at 1367–68."

668 F.2d at 128 (emphasis in original).

■ Nor has the U.K. sought the assistance of the United States in refiling its extradition request with another judge, as *Mackin* points out it can. Rather, the U.K. seeks collateral review in this Court of Judge Sprizzo's order by invoking the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.* Subject matter jurisdiction is posited upon 28 U.S.C. § 1331.[3]

Invocation of the Declaratory Judgment Act will lead, the Government contends, "to an authoritative construction of key treaty

---

**3.** "The Declaratory Judgment Act is not a grant of jurisdiction to the federal courts. It merely makes available an additional remedy in cases of which they have jurisdiction by virtue of diversity and the requisite amount in controversy, or because of a federal question." Wright, *Handbook of the Law of Federal Courts* (3d ed. 1976) at 500–01. 28 U.S.C. § 1331(a) grants the district courts original jurisdiction if a civil action "arises under the Constitution, laws, or treaties of the United States." ·I reject Doherty's contention that the case at bar does not "arise under" the extradition treaty between the United States and the U.K. While earlier judicial formulations of "arising under" cannot be wholly reconciled, more recent commentators stress pragmatic criteria. One has urged the test that for original federal jurisdiction there must be "a substantial claim founded 'directly' upon federal law." Mishkin, *The Federal "Question" in the District Courts,* 53 Col.L.Rev. 157, 165, 168 (1953). See also Wright, *op. cit.,* at 67. More recently, the Supreme Court has said that federal question jurisdiction extends to cases where "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law," *Franchise Tax Board v. Construction Laborers Vacation Trust,* 104 S.Ct. 2841, 2856 (1983). The case at bar turns upon the proper construction of a treaty between the United States and a foreign nation. I conclude that subject matter jurisdiction is present.

*Dreyfus v. Von Finck,* 534 F.2d 24 (2d Cir.1976), upon which Doherty relies, is not to the contrary. Plaintiff, a Swiss citizen and resident, sought recovery from West German citizens and residents for allegedly wrongful confiscation of property in Nazi Germany in 1938. The action was commenced in this Court by attachment of defendants' property. For his substantive rights plaintiff relied *inter alia* upon four general treaties or pacts to which the United States was a party or adherent: the Hague Convention of 1907; the Kellogg-Briand Peace Pact of 1928; the Versailles Peace Pact (to which the United States adhered in 1921); and the Four Power Occupation Agreement of 1945. The Second Circuit, affirming the district court, held that none of these treaties "dealt with the expropriation by Germans of the property of German citizens, and none conferred any private rights with regard to such property which were enforceable in American courts." 534 F.2d at 30. The Court of Appeals' opinion relied on 13 Wright, Miller & Cooper, *Federal Practice and Procedure* § 3563 at 424 (1975) for the proposition that: "Rarely is the relationship between a private claim and a general treaty sufficiently direct so that it may be said to 'arise under' the treaty," *id.* at 29. *Dreyfus* is not at all instructive in the case at bar, where the U.K. sues to enforce an extradition treaty with the United States of which it is a sovereign signatory and party.

provisions." I do not flatter myself that this is a reference to me. Clearly what the U.K. is aiming for is a decision on the merits of the extradition request rendered by an Article III judge, whose decision is appealable under existing statutes to higher courts.

Doherty's contention is that the U.K. as requesting party may not avail itself of the Declaratory Judgment Act to seek collateral review of Judge Sprizzo's denial of extradition. In consequence, in addition to challenging subject matter jurisdiction (fn. 3, *supra*), Doherty argues that the complaint fails to state a claim upon which relief can be granted. I directed that these questions be first considered before briefing or consideration of the merits.

The Government places primary reliance upon *Wacker v. Bisson*, 348 F.2d 602 (5th Cir.1965), in which an extraditee whose extradition had been ordered, after unsuccessfully petitioning for a writ of habeas corpus, was permitted by the majority of a Fifth Circuit panel to invoke the Declaratory Judgment Act. Proceeding from that holding, the Government argues that it "seeks literally nothing more than the same right to obtain judicial review of an adverse extradition decision by declaratory judgment that Doherty would have had if the matter had gone the other way." Brief at 2.

That argument raises two questions: (1) was *Wacker* correctly decided; and (2) assuming that it was, is the converse proposition for which the Government contends a sound one? In the vernacular, is sauce for the goose also sauce for the gander?

I am at liberty to consider the first of these questions, because the Fifth Circuit's decision in *Wacker* is not binding upon this Court. There is apparently no case directly on point in the Second Circuit. Accordingly I may choose between Judge Wisdom's opinion for the *Wacker* majority and Judge Rives's dissent. As for the converse proposition now urged by the Government— whether the requesting party may obtain collateral review by declaratory judgment if its extradition request is denied—the

case at bar is evidently one of first impression in any court.

In *Wacker*, the government of Canada sought the extradition of one J. Samuel Wacker. Wacker was arrested under the complaint for extradition and held without bail pending preliminary examination. That detention was tested by a writ of habeas corpus which the district court denied. A United States Commissioner then held an extradition hearing pursuant to § 3184, and certified to the Secretary of State that the evidence was sufficient to sustain the specified charges and thus justify extradition. Wacker brought another writ of habeas corpus, which the district court rejected. At that point Wacker invoked the Declaratory Judgment Act, a procedural remedy which the majority of the Fifth Circuit panel (reversing the district court) held was available to him. Judge Wisdom wrote:

> "The underlying policies of the Declaratory Judgment Act support the use of declaratory judgments in extradition cases. It is a useful remedy permitting a direct confrontation between the two real parties in interest, the extraditee and the demanding government, without the triangular complications of habeas corpus." 348 F.2d at 608.

Judge Rives dissented, stating in part:
> "The point of holding that the Declaratory Judgment Act has opened a backdoor to review of an extradition order escapes me when the front door provided by the Great Writ grants access to the same court of justice and provides the same scope of relief."

\*     \*     \*     \*     \*     \*

> "It is important that the treaty obligations of the United States be honored without unnecessary delay, and this case well illustrates how permitting review by declaratory judgment in addition to habeas corpus may result in unreasonable, if not interminable delay, not consistent with the prompt performance of our treaty obligations."

*Id.* at 612–13.[4]

■ On the issue of the availability of declaratory judgment in extradition proceedings, I prefer Judge Rives's analysis. The extradition statute is an amalgam of law and diplomacy, but with an emphasis upon the latter. "The substantive right of a foreign country to request the return of a fugitive and the duty of the United States to deliver the fugitive depends entirely on the existence of a treaty between the requesting nation and the United States." *In re United States*, 713 F.2d 105, 107–08 (5th Cir.1983). "Under 18 U.S.C. § 3186, the Secretary of State may not surrender any person to a foreign government unless the person has been found extraditable by a magistrate at a hearing held under 18 U.S.C. § 3184.... These statutory provisions safeguard the fugitive's due process rights." *Escobedo v. United States*, 623 F.2d 1098, 1105 (5th Cir.), *cert. denied*, 449 U.S. 1036, 101 S.Ct. 612, 66 L.Ed.2d 497 (1980). Once the magistrate determines that the fugitive is subject to extradition and so certifies to the Secretary of State, "[t]he decision to surrender the fugitive then rests in the discretion of the Secretary of State." *In re United States, supra*, at 108. "The ultimate decision to extradite is a matter within the exclusive prerogative of the Executive in the exercise of its powers to conduct foreign affairs." *Escobedo v. United States, supra*, at 1105; see also *Sindona v. Grant*, 619 F.2d 167, 174 (2d Cir.1980). Given the paramount importance of foreign affairs in extradition proceedings, it is not surprising that Congress provided limited (albeit meaningful) due process rights of judicial review. Extradition under § 3184 does not involve a trial *court* docketing a judgment for possible review by a court of appeals. Rather, it involves the certification of findings and the underlying record by a *judge* for forwarding to the Secretary of State, so that, in the latter's discretion, further proceedings may be had "according to the stipulations of the treaty or convention." The distinction between "court" and "judge" is central to the concept of extradition; see Judge Friendly's analysis in *Mackin, supra*, at 668 F.2d 129 n. 11, where the diplomatic elements of extradition are stressed: "However, extradition has international aspects far more serious than naturalization" (thus discounting the Government's contention that appeals of naturalization orders should be analogized to extradition orders).

■ The Congress cannot be regarded as having fashioned such precisely divided responsibility in this sensitive area of international relations by accident. Rather, one must conclude it was by design; and the design contemplates a balance between limited judicial review and unfettered executive discretion. The extradition magistrate tests the legality of the extradition proceedings; and if the fugitive is disappointed in the result, habeas corpus is available to him, and consequent appellate review. Even that appellate review represents something of a judicial gloss upon the statute, although it is by now well established; but the nature of an extradition proceeding is in my view entirely inconsistent with permitting either an extraditee or a requesting foreign government, by means of a civil declaratory judgment action, to place the legality of the request not before a district "judge" or "extradition magistrate" (as expressly directed by Congress) but rather before a district *court*, with a consequent full panoply of statutory appellate review.

**4.** Ultimately Wacker's procedural victory availed him nothing. The majority also held that "the scope of review is the same in habeas corpus and declaratory judgment proceedings," so that if the district court concluded that Wacker received "a full and fair hearing in the two habeas proceedings on those issues in this case which are serious, there is no necessity for holding any additional evidentiary hearing."

348 F.2d at 610–11. On remand the district court tendered an additional evidentiary hearing to the parties, who consented that the case be decided on the prior record. District Judge Ainsworth thereupon dismissed Wacker's declaratory judgment action, 256 F.Supp. 542 (E.D.La.1966), and the Fifth Circuit affirmed *per curiam*, 370 F.2d 552 (5th Cir.1967).

Accordingly I conclude that, contrary to the majority decision in *Wacker*, declaratory judgment has no legitimate office to perform in extradition proceedings. Doherty's motion to dismiss the complaint for failure to state a claim must therefore be granted.

■ If I am wrong in that, so that the Second Circuit if asked would follow the majority holding in *Wacker*, the question arises whether a foreign government whose extradition request was denied should be afforded the same ability to obtain collateral review by declaratory judgment that *Wacker* sanctions for an extraditee. For the reasons which follow, I answer that question in the negative.

"Extradition proceedings have been referred to by the Supreme Court as being of a criminal nature." *First National City Bank of New York v. Aristeguieta, supra,* at 287 F.2d 226 n.7 (citing cases). As in criminal prosecutions, the requesting nation (which may be analogized to the prosecutor) brings formidable resources and advantages to bear upon its pursuit of a fugitive. These are summarized in *Aristeguieta* at 226–27; one is compelled to agree with Judge Moore: "An examination of the extradition treaties, statutes, and decisions reveals that the procedural framework of international extradition gives to the demanding country advantages most uncommon to ordinary civil and criminal litigation." *Id.* at 226. Given that imbalance, this Court is not troubled by granting to an extraditee broader rights of judicial review than to the demanding country. Again, analogies may be found in the criminal law. If the trial judge improperly admits or excludes evidence, the defendant may appeal in the event of conviction, but the government may not if defendant is acquitted.[5]

If declaratory judgment, a feature of federal practice since 1934, 6A *Moore's Federal Practice* ¶ 57.02[2] at 57–8 (1984), furnishes an appropriate remedy to a foreign nation disappointed in extradition proceedings, it has escaped the attention of the Departments of Justice and State for a considerable time. In *Mackin, supra,* Judge Friendly discusses in some detail a proposed Extradition Act of 1981 which on September 19 of that year Senator Thurmond and several colleagues introduced "to modernize the extradition laws of the United States." See 668 F.2d at 128. The statute provided for direct appeal in extradition matters, on behalf of the extraditee or the requesting foreign government; Secretary of State Haig praised the bill, including that provision "which for the first time permit[s] appeal from a district court's decision on an extradition request." *Ibid.* A Department of Justice spokesman praised the bill because of its appellate provisions:

"It permits both a fugitive and the United States, on behalf of the requesting country, to directly appeal adverse decisions by an extradition court. Under present law a fugitive can only attack an adverse decision through habeas corpus, and the only option available to the United States, on behalf of a requesting country, is to refile the extradition complaint."

*Id.* at 129.

The Deputy Legal Advisor of the Department of State added:

"Under present law there is no direct appeal from a judicial officer's finding in an extradition proceeding. A person found extraditable may only seek collateral review of the finding, usually through an application for a writ of habeas corpus. The foreign government that is dissatisfied with the results of the hearing must institute a new request for

---

**5.** The analogy is not complete, since as noted *supra* the demanding country may refile its extradition request before another judge. The Government recognizes that option in the case at bar; its brief (at 17) warns that "accepting Doherty's view [of declaratory judgment] would literally compel the Government to continue refiling the request until a favorable decision is

obtained, however long that might take." If this statement was intended to intimidate this Court, it does not; and *quaere* whether unlimited repetitions of judicially rejected contentions comport with the dignity of the United States Attorney's office. But I will leave that determination for, say, judge number 14 on the list.

extradition. The lack of direct appeal in extradition matters adds undesirable delay, expense and complication to a process which should be simple and expeditious. Section 3195 [of the proposed bill] remedies this defect in current procedure by permitting either party in an extradition case to appeal directly to the appropriate United States court of appeals from a judge or magistrate's decision." *Ibid.*

If in fact the Declaratory Judgment Act permitted the foreign government to obtain prompt collateral review from a district court in respect of an unfavorable extradition ruling by the extradition magistrate, it is surprising that neither the Department of State nor the Department of Justice advised the Congress of that alternative vehicle for review when urging the 1981 extradition statute upon the Congress.

In the case at bar the U.K. faces a comparable obstacle in the Second Circuit's *Mackin* decision. I say "comparable" because, as the Government correctly observes in its brief, the availability *vel non* of declaratory judgment to the requesting nation was not argued in *Mackin*. But Judge Friendly's careful analysis of extradition—its nature, and the limitations traditionally placed upon appellate review at the behest of either party—furnishes guidance in the area of collateral review by declaratory judgment as well, and militates against extension of the remedy to the disappointed requesting nation.

Accordingly, I conclude that even if (contrary to my prior ruling) declaratory judgment is available to an extraditee, it is not available to a requesting foreign nation.

I have considered the other arguments and authorities put forward by the Government in support of the present action. I find no merit in them, and they require no discussion.

## CONCLUSION

The motion of defendant Doherty to dismiss the complaint for failure to state a claim is granted. The Clerk of the Court is directed to dismiss the complaint with prejudice.

It is SO ORDERED.