Joseph Patrick Thomas
DOHERTY, Petitioner,

v.

Richard L. THORNBURGH, Attorney General of the United States, Gene McNary, Commissioner of the Immigration and Naturalization Service, and Scott Blackman, District Director of the Immigration and Naturalization Service, New York District, Respondents.

No. 90 Civ. 2676 (MGC).

United States District Court,
S.D. New York.

Nov. 5, 1990.

Somerstein & Pike by Stephen A. Somerstein, Mary Boresz Pike, New York City, for petitioner.

Otto G. Obermaier, U.S. Atty., for the S.D.N.Y., with Claude M. Millman, Stacey J. Moritz, New York City, for respondents.

OPINION AND ORDER

CEDARBAUM, District Judge.

Joseph Patrick Thomas Doherty, an illegal alien in custody pending deportation, petitions for a writ of habeas corpus on a narrow ground. He contends that the due process clause of the Fifth Amendment of the Constitution prohibits his prolonged detention and mandates his release on bond notwithstanding that the Board of Immigration Appeals ("BIA") has fairly and reasonably determined that he is a deportable

alien who presents a risk of flight that cannot be overcome by any conditions of bail. Petitioner does not argue, nor can he do so persuasively, that the BIA abused its discretion when it made that determination. Rather, he urges that the unusual length of his detention violates the constitutional prohibition against deprivation of liberty without due process of law and, as a matter of law, outweighs the customarily countervailing consideration of risk of flight.

Although the Government argues that a deportable alien has no right to substantive as distinguished from procedural due process, both sides agree on the test the courts have applied to determine whether particular governmental action violates the commandment of the Fifth Amendment that "[n]o person shall ... be deprived of life, liberty or property without due process of law." Governmental conduct that "shocks the conscience of a civilized society or interferes with the fundamental rights implicit in our American concept of ordered liberty" violates the due process clause of the Fifth Amendment. In this case, there is no claim of procedural unfairness. The only issue is whether petitioner's detention, prolonged over a period of many years by his and respondents' vigorous pursuit of all available administrative and judicial remedies, has become invalid because of its length. For the reasons discussed below, the petition is denied.

## I.

### Prior Proceedings

The history of the legal proceedings involving Doherty has been discussed in five prior published opinions. *Doherty v. U.S. Dept. of Justice, I.N.S.*, 908 F.2d 1108 (2d Cir.1990); *Doherty v. Meese*, 808 F.2d 938 (2d Cir.1986); *United States v. Doherty*, 786 F.2d 491 (2d Cir.1986); *United States v. Doherty*, 615 F.Supp. 755 (S.D.N.Y. 1985); *Matter of Doherty*, 599 F.Supp. 270 (S.D.N.Y.1984). The following account is largely chronological and deals with the events pertaining to (1) the Government's effort to extradite petitioner, (2) the Government's collateral attack by declaratory judgment on the denial of extradition, (3) the Government's continuing attempt to

deport petitioner, and (4) petitioner's continuing effort to obtain release on bond.

Doherty, a native of Belfast, was a member of the Provisional Irish Republic Army ("PIRA"). On May 2, 1980, at the direction of PIRA, he participated in an ambush of a convoy of British soldiers. In the ensuing gun battle, a British officer was killed. Petitioner was arrested and tried for murder. Before the final decision, at the direction of PIRA, petitioner and seven other PIRA members escaped from the maximum security prison where they were being held. Petitioner was convicted of murder in absentia and was sentenced to life imprisonment. He fled to the Republic of Ireland, where he remained in hiding for some time. On or about March 1, 1982, he illegally entered the United States with a false passport.

Upon his arrival, Doherty was met by friends of PIRA and given assistance in finding lodging and employment in New York City. Sixteen months later, on June 18, 1983, he was arrested on a deportation warrant issued by the Immigration and Naturalization Service ("INS"). The District Director of the INS determined that petitioner should be held without bond. Petitioner requested a bond redetermination hearing before an immigration judge. The bond redetermination hearing was interrupted when the United States Marshal took custody of petitioner pursuant to an extradition warrant. On October 12, 1983, Judge Sprizzo denied petitioner's application for release on bond pending the outcome of the extradition proceedings.

Petitioner's counsel sought assurance from the INS that deportation proceedings would be stayed during the extradition proceedings. Although the parties do not agree about what assurances were given, the deportation proceedings did not resume until after the proceedings before Judge Sprizzo had been concluded on December 12, 1984. Following an extensive hearing, Judge Sprizzo denied the extradition request because he found that the crimes on which it was based fell within the political offense exception to the extradition treaty between the United States and the United Kingdom. *Matter of Doherty*, 599 F.Supp.

270. The Marshal then returned petitioner to the custody of the INS pursuant to the deportation warrant.

On December 21, 1984, an immigration judge held a bond hearing and ordered petitioner released on $200,000 bond. At the request of the INS, the BIA issued a stay pending appeal.

On February 4, 1985, the Government filed a declaratory judgment action seeking collateral review of Judge Sprizzo's denial of extradition. Three weeks later, deportation proceedings were recommenced. The Government filed additional charges of deportability, and Doherty requested and received a one-month adjournment in order to respond to the new charges.

On March 4, 1985, the BIA reversed the immigration judge's bond determination and ordered petitioner held without bond. Two weeks later, petitioner requested a stay of the deportation proceedings until after (1) final determination of the Government's declaratory judgment action collaterally attacking Judge Sprizzo's denial of extradition, (2) resolution of two separate actions that he had brought under the Freedom of Information Act, and (3) the expiration of a reasonable time to respond to the additional charges of deportability. Over the INS's objection, the immigration judge granted petitioner's application and stayed the deportation proceedings until final resolution of the declaratory judgment action.

The Government's declaratory judgment suit was dismissed by Judge Haight on June 25, 1985. *United States v. Doherty*, 615 F.Supp. 755. The Second Circuit affirmed Judge Haight's order on March 13, 1986, *United States v. Doherty*, 786 F.2d 491, and later denied the Government's petition for rehearing.

On September 3, 1986, petitioner requested that deportation proceedings resume, and on September 12, 1986, he withdrew all his applications for relief from deportation, conceded that he was deportable because he had entered the United States without valid immigration documents, 8 U.S.C. §§ 1251(a)(1), 1182(a)(20), and designated the Republic of Ireland as the country of deportation, 8 U.S.C. § 1253(a). The INS objected to petitioner's designation of Ireland on the ground that deporting him to Ireland would be prejudicial to the interests of the United States. The INS requested that instead petitioner be deported to the United Kingdom. *Id.* On September 19, 1986, the immigration judge ordered that Doherty be deported to the Republic of Ireland.

Four days later, Doherty filed a petition for a writ of habeas corpus seeking immediate deportation to the Republic of Ireland. Petitioner sought to be deported before a new extradition treaty between the United Kingdom and the United States would eliminate the political offense exception upon which Judge Sprizzo had relied in denying extradition. Judge Leisure denied the petition on September 25, 1986. The following day, the INS appealed from the immigration judge's order of deportation to Ireland. Petitioner requested a summary dismissal of the INS appeal, which the BIA denied, as well as an expedited appeal of Judge Leisure's denial of his petition, which the Second Circuit granted. On December 23, 1986, the Second Circuit affirmed Judge Leisure's decision and rejected petitioner's claim that the Government was improperly delaying deportation in order to keep him available for extradition under the soon-to-be-enacted revised extradition treaty. *Doherty v. Meese*, 808 F.2d 938. The Second Circuit found instead that petitioner's "tactical decision" to seek a stay of the deportation proceedings during the declaratory judgment action was the "sole cause" of the almost eighteen-month delay from March 18, 1985 to September 3, 1986. *Id.* at 941.

The BIA affirmed the immigration judge's order of deportation to the Republic of Ireland on March 11, 1987. Two days later, the INS requested that the BIA stay its decision and reopen the deportation proceedings on the ground that, because of an administrative error, the BIA had never received supplemental evidence offered by the INS. The BIA rejected the INS request and affirmed its March 11th decision on May 22, 1987. The INS then asked the BIA to refer its decision to the Attorney

General. 8 C.F.R. § 3.1(h). On October 28, 1987, Attorney General Meese agreed to review the case. At petitioner's request, the Attorney General extended the date for submission of petitioner's brief from December 1, 1987 to January 8, 1988.

On December 1, 1987, a new extradition treaty between the United Kingdom and the Republic of Ireland became effective. Two days later, petitioner made a motion before the BIA in which he argued that the new treaty revised the political offense exception in a way that would subject him to extradition to the United Kingdom in the event that he were deported to the Republic of Ireland. Petitioner moved to reopen the deportation proceedings to allow him to submit new applications for relief from deportation, specifically, applications for asylum, 8 U.S.C. § 1158(a), withholding of deportation, 8 U.S.C. § 1253(h), and redesignation of the country of deportation. The BIA referred Doherty's motion to reopen to the Attorney General.

On June 9, 1988, Attorney General Meese reversed the BIA and held under 8 U.S.C. § 1253(a) that deportation to Ireland would be prejudicial to the interests of the United States and that, instead, the INS should deport petitioner to the United Kingdom. At the same time, the Attorney General remanded to the BIA petitioner's motion to reopen his deportation proceedings. On June 21, 1988, Doherty filed a petition for review by the Second Circuit of the Attorney General's determination. At Doherty's request, that petition was held in abeyance pending the conclusion of deportation proceedings.

On November 14, 1988, the BIA granted petitioner's motion to reopen the deportation proceedings. On December 5, 1988, the INS requested that the BIA's decision to reopen be certified to the Attorney General for review. The Attorney General accepted the request for certification on February 22, 1989. In accordance with the briefing schedule set by the Attorney General, all briefs regarding the motion to reopen were submitted by April 26, 1989.

On May 2, 1989, petitioner filed an application for redetermination of bond which was dismissed by the immigration judge.

He then applied to the BIA for redetermination of bond.

On June 30, 1989, Attorney General Thornburgh reversed the BIA's decision to reopen petitioner's deportation proceedings. On July 20, 1989, petitioner filed in the Second Circuit a petition for review of Attorney General Thornburgh's denial of the motion to reopen, which was consolidated with the petition for review of Attorney General Meese's rejection of Ireland as the country of deportation.

On August 9, 1989, the BIA denied petitioner's application for redetermination of bond on the ground that the Attorney General's denial of the motion to reopen made the order of deportation to the United Kingdom administratively final and divested the BIA of jurisdiction. On August 22, 1989, petitioner filed a bond application with the Acting District Director of the INS, who, upon motion of petitioner, recused himself and forwarded petitioner's application to the Associate Regional Commissioner. The Associate Regional Commissioner denied petitioner's bond application on September 22, 1989. Three weeks later, petitioner appealed the denial to the BIA, arguing that the length of his detention without bond violated due process.

On March 29, 1990, the BIA affirmed the denial of Doherty's application for redetermination of bond. Among its holdings were that (1) "a substantial portion of the period of [Doherty's] detention" was attributable to his litigation strategy, (2) the Fifth Amendment due process clause did not preclude further detention, and (3) Doherty continued to present such a great risk of flight that no bond conditions could ensure his availability for deportation. *In re Doherty*, BIA File No. A26185231 (BIA March 29, 1990). On April 20, 1990, Doherty filed this petition for habeas corpus, in which he seeks review of the BIA's decision only with respect to the due process aspect.

On June 29, 1990, the Second Circuit affirmed Attorney General Meese's rejection of Ireland as the country of deportation, reversed Attorney General Thornburgh's denial of Doherty's motion to re-

open, and remanded the case to the BIA for consideration of Doherty's applications for relief from deportation. 908 F.2d 1108. Subsequently, the Second Circuit denied the Government's petition for rehearing.

On September 4, September 17 and October 2, 1990, I held evidentiary hearings in connection with this petition.

## II.

### Standard of Review

■ Petitioner seeks review of the March 29, 1990 affirmance by the BIA of the Associate Regional Commissioner's denial of bond redetermination. *In re Doherty*, BIA File No. A26185231. The BIA's findings of fact must be affirmed if they are supported by "substantial evidence," but review of purely legal issues is plenary. *Ardestani v. U.S. Dept. of Justice, I.N.S.*, 904 F.2d 1505, 1508 (11th Cir.1990). Petitioner has not attacked the BIA's factual findings. However, because the Second Circuit has suggested that broader review of factual findings may be appropriate when risk of flight is weighed in the context of determining the constitutionality of prolonged detention, *see United States v. Gonzales Claudio*, 806 F.2d 334, 343 (2d Cir.1986), I held evidentiary hearings to permit petitioner to persuade me that, in the context of due process analysis, the risk of his flight should be given less weight. After further reflection, I do not believe that the reevaluation performed by the Second Circuit in *Gonzales Claudio* contemplates an evidentiary hearing. In any event, the evidence presented did not in any respect undermine the BIA's evaluation of the appropriate factors to consider in weighing risk of flight or the BIA's uncontested findings of fact. I have concluded that the BIA correctly gave very heavy weight to the risk of petitioner's flight, and that its constitutional decision was correct as well.

## III.

### The Law

■ Respondents have raised the threshold question of whether petitioner has standing to claim the substantive protection of the Fifth Amendment. While they concede that deportable aliens have procedural due process rights, respondents argue that admittedly illegal aliens have no substantive due process right to liberty during deportation proceedings. Although courts have used hyperbole to emphasize the breadth of governmental power over immigration matters, the cases cited by respondents do not support such an extreme position. Nor does the language of the Fifth Amendment's due process clause that "[n]o person" shall be deprived of liberty without due process of law distinguish between aliens and citizens. Procedural and substantive due process are not two independent kinds of rights; they are two aspects of the same constitutional protection of life, liberty, and property. As the Supreme Court has explained,

> [s]o-called "substantive due process" prevents the government from engaging in conduct that "shocks the conscience," or interferes with rights "implicit in the concept of ordered liberty." When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner. This requirement has traditionally been referred to as "procedural" due process.

*United States v. Salerno*, 481 U.S. 739, 746, 107 S.Ct. 2095, 2101, 95 L.Ed.2d 697 (1987) (citations omitted). While "there is no substantive due process right not to be deported," *Doherty v. Meese*, 808 F.2d 938, 944 (2d Cir.1986); *Linnas v. I.N.S.*, 790 F.2d 1024, 1031 (2d Cir.), *cert. denied*, 479 U.S. 995, 107 S.Ct. 600, 93 L.Ed.2d 600 (1986), *reh'g denied*, 479 U.S. 1070, 107 S.Ct. 964, 93 L.Ed.2d 1012 (1987), there is a substantive due process right to liberty while an alien is in this country.

The Supreme Court has held that an individual's due process rights are violated by governmental conduct that "shocks the conscience," *Rochin v. California*, 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952), or interferes with rights "im-

plicit in the concept of ordered liberty," *Palko v. Connecticut,* 302 U.S. 319, 325, 58 S:Ct. 149, 152, 82 L.Ed. 288 (1937). Petitioner argues that the unusual length of his confinement by itself constitutes such a violation. For this proposition, he relies on the opinion of the Second Circuit in *United States v. Gonzales Claudio,* 806 F.2d 334, 340 (1986). Petitioner also argues that, even if the length of confinement by itself is not unconstitutional, his continued detention without bond violates due process under the three-part test actually employed in *Gonzales Claudio,* in which the length of confinement is considered together with the extent to which the Government bears responsibility for delays in the proceedings and the strength of the evidence of risk of flight. *Id.*

The Second Circuit has held that *Gonzales Claudio,* a case involving criminal defendants held for a prolonged period without bail before any trial, does not control the constitutionality of detention pending deportation. *Dor v. District Director, I.N.S.,* 891 F.2d 997, 1003 (2d Cir.1989). *Gonzales Claudio* does not control in the deportation context because of the absence of a presumption of innocence in deportation proceedings and the inapplicability of the constitutional and statutory rights to a speedy trial.

This is not a case in which a person presumed to be innocent is being detained prior to any trial. "A person arrested on the preliminary warrant [of deportation] is not protected by a presumption of citizenship comparable to the presumption of innocence in a criminal case." *INS v. Lopez–Mendoza,* 468 U.S. 1032, 1043, 104 S.Ct. 3479, 3485, 82 L.Ed.2d 778 (1984) (quoting *United States ex rel. Bilokumsky v. Tod,* 263 U.S. 149, 154, 44 S.Ct. 54, 56, 68 L.Ed. 221 (1923)). The absence of a presumption of innocence in deportation proceedings affects the constitutionality of detention because "[t]he motivating concern for limiting the length of pretrial detention in this country is the presumption of innocence." *United States v. Gallo,* 653 F.Supp. 320, 341 (E.D.N.Y.1986); *see also Gonzales Claudio,* 806 F.2d at 343 (noting that pretrial detainees are "presumed innocent");

*cf. Dor v. District Director,* 891 F.2d at 1003 ("a deportation proceeding is not a criminal proceeding and the full trappings of legal protections that are accorded to criminal defendants are not necessarily constitutionally required in deportation proceedings" (citation omitted)). The difference between pretrial and predeportation detention is even greater where the alien concedes, as Doherty does, that he is not a citizen and has entered the country illegally. The remaining proceedings, petitioner's applications for asylum and for withholding of deportation, are matters on which Doherty, not the Government, has the burden of going forward.

Nor is this a case in which the length of detention impinges upon the right to a speedy trial. The Sixth Amendment, by its terms, applies only to criminal prosecutions, and deportation proceedings are not criminal proceedings. The Speedy Trial Act, 18 U.S.C. §§ 3161–3174, also applies only to criminal prosecutions. Indeed, Doherty does not complain that he should be released because he has not yet had a hearing on the question of his deportability. He has conceded his deportability on the ground of illegal entry.

Even if petitioner's detention pending deportation were treated as analogous to pretrial detention in a criminal case, petitioner's argument would fail because, in *Gonzales Claudio,* the Second Circuit held that "the due process issue is not to be resolved solely on the basis of the duration of ... confinement." 806 F.2d at 340. A hard and fast rule that detention pending deportation may not continue longer than some fixed period of time, regardless of the circumstances, would be wholly arbitrary. Neither the due process clause of the Fifth Amendment nor the case law supports such an inflexible limit. Courts considering the constitutionality of detention pending deportation, rather than adopting a specific time limit for detention, have considered the reasonableness of the length of detention on a case-by-case basis, in view of all the circumstances. *See, e.g., United States ex rel. Zdunic v. Uhl,* 144 F.2d 286, 287 (2d Cir.1944); *United States ex rel.*

*Ross v. Wallis,* 279 F. 401, 403 (2d Cir. 1922); *Moraitis v. Delany,* 46 F.Supp. 425, 431 (D.Md.1942), *modified on other grounds,* 136 F.2d 129 (4th Cir.1943); *Colyer v. Skeffington,* 265 F. 17, 78 (D.Mass. 1920).

■ The constitutionality of detention must be considered in light of its purpose. Detention pending deportation is regulatory, not punitive. The regulatory purpose for detention pending deportation is to ensure that the alien is available for deportation once a final order of deportation is obtained. *Wong Wing v. U.S.,* 163 U.S. 228, 235, 16 S.Ct. 977, 980, 41 L.Ed. 140 (1896).

If at some point detention ceases to serve the Government's legitimate regulatory purpose, continued detention becomes punitive and unconstitutional. This would be the case if petitioner could show that deportation could not be effected, *United States ex rel. Ross v. Wallis,* 279 F. 401, 403 (2d Cir.1922); *United States ex rel. Janavaris v. Nicolls,* 47 F.Supp. 201, 203 (D.Mass.1942); *Moraitis v. Delany,* 46 F.Supp. 425, or that the Government was not continuing to make a reasonable, good faith effort to deport him. Indeed, Congress has expressly provided for release from detention if the Attorney General fails to pursue deportation with "reasonable dispatch," 8 U.S.C. § 1252(a), (c), or fails to deport an alien within six months of a final order of deportation, 8 U.S.C. § 1252(c).

Petitioner does not argue that the Government will be unable to deport him. Nor does he suggest that the Government has given up its effort to deport him or that the Government is deliberately delaying the deportation proceedings for the purpose of punishing him by prolonging his detention. Further, petitioner does not contend that the BIA's finding that he presents a substantial risk of flight is unreasonable.

Even if the three-part balancing test actually employed in *Gonzales Claudio* applied to this case, petitioner's continued detention would be constitutional because of the acceptability of longer detention pending deportation than would be permissible before a criminal trial is commenced, petitioner's responsibility for a major portion of the length of his detention, and the very great weight of the evidence of risk of flight.

### A. Length of Detention

■ Doherty has now been detained without bond for over seven years and four months. While it is clear that petitioner's detention will continue, its future length cannot be predicted with any certainty.

One way to evaluate the length of detention is to compare it to other cases. Although no case has come to my attention in which a deportable alien has been in custody for as long as Doherty, the Second Circuit has denied a writ of habeas corpus to a deportable alien who had been in INS custody for more than five years. *See Dor v. District Director, I.N.S.,* 891 F.2d 997.

The length of detention may also be measured by reference to statutory limits on detention. In *Gonzales Claudio,* the Second Circuit noted that the ninety-day period specified in the Speedy Trial Act, 18 U.S.C. § 3164(b), represented "the considered view of the Congress as to the normal limit on pretrial detention" and provided "at least a point of reference in our consideration of the constitutional limit on such detention." 806 F.2d at 340–341. Applying the same analysis to the detention provisions of the immigration statutes, however, shows that Congress did not set a specific time limit for detention pending deportation, but rather, required that the Attorney General pursue deportation "with such reasonable dispatch as may be warranted by the particular facts and circumstances in the case of any alien," 8 U.S.C. § 1252(a), (c), and that an alien be deported within six months from the date of a final order of deportation, 8 U.S.C. § 1252(c).[1]

---

1. When an alien seeks judicial review of an administratively final order of deportation, the six-month period does not begin until the order becomes judicially final. *Dor v. District Director, I.N.S.,* 891 F.2d at 1002.

## B. *Responsibility for Delay*

Petitioner contends that the length of his detention without bond is attributable to delays caused by the Government. The Government has zealously pursued its object of deporting Doherty to the United Kingdom. Petitioner has not shown that the Government has improperly delayed the deportation proceedings or opposed petitioner's applications for relief for the purpose of prolonging his detention. In fact, an examination of the prior proceedings shows that substantial portions of the period of Doherty's detention, including some portions for which Doherty seeks to blame the Government, are attributable to his own litigation strategy. The Second Circuit has held that the eighteen-month delay from March 18, 1985 to September 3, 1986, during which the deportation proceedings were stayed at Doherty's request, was "solely the result of [Doherty's] own tactical decision." *Doherty v. Meese*, 808 F.2d at 941. Doherty argues that this period is attributable to the Government because its collateral attack on Judge Sprizzo's ruling was improper, but this argument is foreclosed by the Second Circuit's ruling. More recently, the BIA found that "a substantial portion of the period of [Doherty's] detention can fairly be attributed to him." *In re Doherty*, BIA File No. A26185231, at 7 (BIA March 29, 1990). The BIA could reasonably have concluded that Doherty's strategic decision in September of 1986 to withdraw his applications for relief from deportation in a sudden effort to be deported to the Republic of Ireland also prolonged his detention. Doherty began his effort to be deported to Ireland immediately after the eighteen-month period which the Second Circuit found attributable to him. He did an about-face in December of 1987, after the passage of a new treaty between Ireland and the United Kingdom, which Doherty argued would result in his extradition to the United Kingdom if he were returned to Ireland. He moved to reopen the deportation proceedings and resume his applications for relief from deportation. The fourteen-month period from the time Doherty abandoned his applications for relief from deportation to the time

he moved to resume them is attributable to his change in strategy. The interruption in petitioner's applications for relief from deportation resulting from his change in strategy lasted from the withdrawal of his applications in September of 1986 to the Second Circuit's decision reopening the deportation proceedings in June of 1990, a total of three years and nine months. Although this interruption might have been shorter had the Government not opposed Doherty's motion to reopen the proceedings, the Government's opposition, albeit unsuccessful, cannot be characterized as frivolous.

Petitioner also argues that the following periods should be attributed to the Government: (1) the eight months from April of 1984 to December of 1984, when the Government's extradition request was under consideration by Judge Sprizzo; (2) the twenty-one months from September of 1986 to June of 1988, during which the Government appealed the order of deportation to Ireland—six months for the appeal to the BIA, two months during which the Government sought reconsideration of the BIA's decision, and thirteen months from the time the Government asked the Attorney General to review the BIA's order until the Attorney General reversed the order; and (3) the time required for the Government's appeal to the Attorney General of the BIA's order to reopen. It would be inappropriate to attribute to the Government the time required for the appeal of the order of deportation to Ireland because it was necessitated by Doherty's sudden strategic decision to seek that deportation and because the Second Circuit ultimately upheld the Government's argument that deportation to Ireland would prejudice the interests of the United States. The Government's appeal of the BIA's order to reopen deportation proceedings did not add to the length of petitioner's detention because the Second Circuit decided the appeal of the order to reopen at the same time that it decided the appeal of the order of deportation to Ireland. Finally, none of the delay which petitioner seeks to attribute to the Government is of the same nature as

the delay found to be constitutionally relevant by the Second Circuit in *Gonzales Claudio*. In that case, the Government had not yet turned over to defense counsel all the discovery material it was required to produce more than fourteen months after the defendants' detention began. 806 F.2d at 342. With the possible exception of the two-month period during which the Government sought reconsideration from the BIA because the Government's evidence had been inadvertently delayed, the periods which petitioner seeks to attribute to the Government were not due to failures to perform required obligations. Instead, the time periods cited were devoted to the argument and consideration of the difficult legal issues presented by petitioner's case.

### C. *Risk of Flight*

The strength of the evidence of risk of flight significantly favors the Government. The BIA found that Doherty presented such a great risk of flight that no conditions of bail would reasonably assure his presence for future proceedings. Petitioner concedes that the BIA's finding withstands the "substantial evidence" standard of review. After applying the broader standard of review used in *Gonzales Claudio* and reevaluating the facts for due process purposes, I find that the evidence of risk of flight remains extremely weighty. Doherty has previously escaped from prison and fled from lawful authorities. He entered the United States with a false passport. He lived in this country for only sixteen months before his arrest. He is not married, and he has no relatives in this country. His entire family is in Ireland. Apart from his connections with those who sympathize with him and his cause, he has no purely personal ties to this community. Doherty has strong ties to a foreign paramilitary organization. He has previously been able to hide in the United States under an assumed name with the assistance of Americans who sympathize with his cause. If deported, he faces life imprisonment. It is difficult to imagine circumstances which would present a greater likelihood that petitioner, if released, would abscond and not surrender for deportation.

This evidence of risk of flight is significantly stronger than the evidence of risk of flight in *Gonzales Claudio*. In *Gonzales Claudio*, the Second Circuit relied on the absence of any prior acts of flight from lawful authority and the defendants' strong ties to the community in giving "different weight" to the evidence of risk of flight in the constitutional analysis. 806 F.2d at 343.

### D. *Balancing of the Factors*

While the length of petitioner's detention is extremely troubling, it does not violate due process in light of all the circumstances. First, because many of the constitutional provisions applicable to persons accused of crime do not apply to aliens in deportation proceedings, detention pending deportation may be longer than pretrial detention without offending traditional concepts of fairness. Second, petitioner has not established that the Government is responsible for any significant delay in his deportation proceedings. To the contrary, his own strategic maneuvers have caused significant delays. The Second Circuit has warned that neither pretrial detainees nor deportable aliens may "litigate ... matters to the ultimate degree and then rely on the extra time attributable to their ... practice to claim that the duration of ... detention violates due process." *Dor v. District Director, I.N.S.*, 891 F.2d at 1003; *United States v. Gonzales Claudio*, 806 F.2d at 341. Finally, the evidence is overwhelming that petitioner, if released, would pose such a substantial risk of flight that no conditions of bail could reasonably assure his surrender for deportation. The strength of the evidence of risk of flight, combined with petitioner's failure to establish that the Government has improperly delayed deportation proceedings, shows that petitioner's detention continues to serve the valid regulatory purpose of keeping him available for deportation. The petition for a writ of habeas corpus is therefore denied.

SO ORDERED.