**UNITED STATES of America, Appellee,**

v.

**Orlando GONZALES CLAUDIO and Isaac Camacho-Negron, Defendants-Appellants.**

**Nos. 305, 302, Dockets 86–1347, 86–1364.**

United States Court of Appeals, Second Circuit.

Argued Oct. 21, 1986.

Decided Nov. 20, 1986.

Michael E. Deutsch, Chicago, Ill., for defendant-appellant Gonzales Claudio.

Richard A. Reeve, Asst. Federal Public Defender, New Haven, Conn. (Thomas G. Dennis, Federal Public Defender, New Haven, Conn., on the brief), for defendant-appellant Camacho-Negron.

Stanley A. Twardy, Jr., U.S. Atty., New Haven, Conn. (Carmen Espinosa Van Kirk, Asst. U.S. Atty., Hartford, Conn., on the brief), for appellee.

Before VAN GRAAFEILAND, NEWMAN, and PRATT, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This appeal presents the important issue of whether and under what circumstances the duration of the pretrial detention of a defendant denied bail because he is a risk to flee exceeds the limitations of the Due Process Clause of the Fifth Amendment. The issue arises on an appeal from orders of the District Court for the District of Connecticut (T. Emmet Clarie, Judge), continuing the pretrial detention of Isaac Camacho-Negron and Orlando Gonzales Claudio. Their detention began on August 30, 1985. On the date their appeal was heard, their detention had lasted fourteen months. A trial date has been set for March 3, 1987. The Government estimates the trial will last eight months. If this estimate proves to be correct, the defendants will have been incarcerated for two years and two months before a determination of their guilt or innocence. Without determining a single time period that marks the constitutional limit of pretrial detention in all cases, we conclude that the continued pretrial detention of these defendants, under the circumstances of this case, is unconstitutional. We therefore reverse the orders of deten-

tion and remand for the setting of appropriate conditions of release.

## Background

Much of the background of the pending appeals is set forth in *United States v. Melendez-Carrion*, 790 F.2d 984 (2d Cir. 1986). That was an appeal by eight defendants, including the two defendants in the pending appeal, from orders of the District Court requiring their pretrial detention pursuant to the Bail Reform Act of 1984, 18 U.S.C. § 3142(e) (Supp. III 1985). The eight defendants were among seventeen defendants indicted on August 28, 1985, for the 1983 robbery of a Wells Fargo depot in West Hartford, Connecticut.[1] Responsibility for the robbery has been claimed by a group calling itself Los Macheteros (the machete wielders), a paramilitary, terrorist organization dedicated to achieving independence for Puerto Rico. Evidence presented to the District Court in the course of the detention hearings strongly indicates that this organization has been responsible for violent acts of terrorism, including the killing of two United States servicemen in an attack on a bus and the destruction of several Puerto Rico National Guard planes at Muniz Air Base. The indictment alleges that the Wells Fargo robbery, in which $7.6 million was taken, was carried out by Victor Gerena, who is a fugitive. The other defendants are alleged to have played roles in the planning of the robbery or the transportation of the stolen money from Connecticut to locations outside the continental United States.

On the prior appeal, we made several rulings pertinent to the pending appeal. First, we unanimously ruled that section 3142(e) was constitutional in permitting pretrial detention without bail for those found to present a risk of flight. Second, we ruled that the detention of appellants Camacho-Negron and Gonzales Claudio, who had been ordered detained solely because of danger to the community, was unconstitutional. That ruling was made by a divided panel, with the members of the majority relying on different grounds. The writer concluded that the provision of section 3142(e) authorizing preventive detention on grounds of danger to the community was unconstitutional on its face.[2] Chief Judge Feinberg concluded that pretrial detention on grounds of dangerousness becomes unconstitutional at some point and that the detention of Camacho-Negron and Gonzales Claudio, which had lasted for eight months at the time of the prior appeal, had exceeded that point. Third, we ruled, by a divided panel, that the cases of Camacho-Negron and Gonzales Claudio should be remanded to the District Court for consideration of whether detention was warranted on the ground of risk of flight and that the District Judge should set appropriate conditions of release unless the Judge concluded that no conditions of release would "reasonably assure" that these defendants would appear for trial.[3] 790 F.2d at 1004.

On remand, Judge Clarie heard extensive argument from counsel on the issue of whether Camacho-Negron and Gonzales Claudio should be detained on the ground of risk of flight. On July 25, 1986, Judge Clarie ruled, on the basis of detailed findings, that both appellants should be detained because of risk of flight and that no conditions of release would provide reasonable assurance of their attendance at trial. Upon a motion for clarification, Judge Clarie informed appellants' counsel that he had not previously determined whether these appellants presented a risk of flight warranting their detention. The District Judge

---

1. A superseding indictment was returned on March 21, 1986, adding additional charges and naming three additional defendants.

2. That position was subsequently adopted by both members of the panel majority in *United States v. Salerno*, 794 F.2d 64 (2d Cir.1986), *cert. granted*, —— U.S. ——, 107 S.Ct. 397, 93 L.Ed.2d 351 (1986).

3. We stayed issuance of the mandate to afford an opportunity for review of our decision by the Supreme Court. Upon notification that the United States had elected not to petition for a writ of certiorari, we issued the mandate.

also declined to make additional findings of fact proposed by the appellants. The appeal from these rulings raises three issues: (1) whether the District Court's consideration of risk of flight as a ground of detention violated the Bail Reform Act of 1984, (2) whether the findings of risk of flight are clearly erroneous, and (3) whether the duration of detention on the ground of flight has now exceeded constitutional limits.

## Discussion

1. Appellants contend initially that it was improper for the District Court to consider detention on the ground of flight after our invalidation of the detention orders that had rested on the ground of dangerousness. Appellants argue that the Bail Reform Act requires consideration of all asserted grounds for detention at a single hearing and that the Government waived the opportunity to seek detention on the ground of flight by failing to assert that ground on the prior appeal.

The authority of the District Court to consider detention on the ground of flight was established as the law of the case on the prior appeal. Our prior opinion explicitly directed the District Court, on remand, to "consider whether [the appellants'] detention is warranted on the ground of flight." 790 F.2d at 1004. Moreover, appellants challenged this aspect of the prior ruling by a motion for modification, which was denied by this Court on June 5, 1986. The District Court was obliged to proceed in conformity with our mandate, *see Briggs v. Pennsylvania Railroad Co.,* 334 U.S. 304, 68 S.Ct. 1039, 92 L.Ed. 1403 (1948), and there are no extraordinary circumstances that permit us to disregard the law of the case that was established on the prior appeal. *Compare United States v. Papadakis,* 802 F.2d 618 (2d Cir.1986) (law of case applied), and *Zdanok v. Glidden Co., Durkee Famous Foods Division,* 327 F.2d 944 (2d Cir.), *cert. denied,* 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964) (same), *with United States v. Fernandez,* 506 F.2d 1200 (2d Cir.1974) (law of case reconsidered).

We had no occasion on the prior appeal to decide whether a district court ordinarily must adjudicate at the first opportunity both grounds of detention urged by the Government. That appeal presented the unusual circumstance where the asserted ground for detention, dangerousness, was ruled unconstitutional. Having made that constitutional ruling, we remanded, directing the District Court to consider the issue it had not reached—detention on the ground of flight. We did not decide on that appeal and need not consider now whether an alternative ground of detention may be adjudicated after an order based on an initial ground has been set aside for reasons of less than constitutional dimension.

2. Appellants next challenge the adequacy of the findings supporting detention on the ground of flight. The basic biographical facts concerning both appellants are not in dispute. Gonzales Claudio is 35, married, and the father of four children, one of whom was born during the father's detention in this case. He has worked all his life as a farmer in a small town in Puerto Rico. Prior to the instant case, he had never been arrested. Camacho-Negron is 39, married, and the father of three children. He has lived all his life in Puerto Rico. He served in the armed forces and saw combat duty in Vietnam. He has been steadily employed and currently owns his own locksmith business. He has no prior arrests.

Based on testimony from an agent of the Federal Bureau of Investigation and wiretap and documentary evidence, Judge Clarie made several findings concerning the appellants' connection with the Los Macheteros organization and with the Wells Fargo robbery. Both are salaried members of Los Macheteros and have been assigned code names in the organization. They have participated in paramilitary operations of Los Macheteros, including the attack on the Muniz Air Base. Gonzales Claudio was also involved in the raid in which two United States sailors were killed.

Judge Clarie further found, for purposes of the bail hearing, that both appellants participated in the transportation of the stolen money some months after the robbery. In March 1984, both were observed entering a motor home in upstate New York. This vehicle, purchased by a co-defendant four days after the robbery, is believed to have been used to transport the stolen Wells Fargo money to Mexico. Gonzales Claudio drove another vehicle into Mexico on the same day that the motor home crossed the Mexican border. He was overheard on a wiretap discussing the robbery with a co-defendant prior to their arrest. Camacho-Negron is believed to have used his skills as a locksmith and cabinet maker to alter the interior of the motor home so that it could conceal the stolen money in secret compartments. Judge Clarie found that he "took part" in moving the motor home into Mexico.

With respect to Gonzales Claudio, Judge Clarie made additional findings bearing more specifically on risk of flight. In June 1985, Gonzales Claudio, while traveling from Puerto Rico to Texas to Mexico, made travel arrangements for a portion of the journey under a false name, although he crossed the Mexican border using his own name. In addition, he was observed on several occasions using evasive driving techniques in an apparent effort to avoid surveillance. He was observed at a Macheteros safe house in Puerto Rico. He did not voluntarily permit FBI agents to enter his home upon his arrest, though he did not resist arrest after the home was entered. There are no comparable findings with respect to Camacho-Negron. Judge Clarie found only that he had the "ability" to travel to foreign countries. His only foreign travel shown by the evidence was his journey to Mexico in March 1984, a trip made under his own name.

In this Circuit it is settled that a District Court's determination that grounds exist to detain a defendant prior to trial will be reviewed under the "clearly erroneous" standard. *See United States v. Gotti,* 794 F.2d 773, 778 (2d Cir.1986); *United States v. Melendez-Carrion, supra,* 790 F.2d at 994; *United States v. Martir,* 782 F.2d 1141, 1146 (2d Cir.1986). We have also applied that standard when the findings favored the defendant. *See United States v. Chimurenga,* 760 F.2d 400, 405 (2d Cir. 1985).

Applying this restrictive standard, we see no basis for disturbing Judge Clarie's determination that both appellants present a risk of flight and that no conditions of release would "reasonably assure" their presence at trial. 18 U.S.C. § 3142(e); *see United States v. Berrios-Berrios,* 791 F.2d 246 (2d Cir.1986).

The statute specifically instructs the trial judge to consider, among other things, "the nature and circumstances of the offense charged" and "the weight of the evidence against the [defendant]." 18 U.S.C. § 3142(g)(1), (2). In this case those circumstances support the District Judge's conclusion. The evidence presented by the Government tended to show the commission of a crime by those bent on taking daring and at times violent actions. It is not clearly erroneous to conclude that those whom the evidence shows participated in such activities are unlikely to observe legal obligations to attend a trial that may result in the imposition of substantial sentences. We reject the contention that consideration of the nature of the crime and the evidence of the guilt of those charged amounts to an impermissible determination of guilt before trial, transforming pretrial detention into punishment. Pretrial detention, on appropriate facts, to guard against the risk of flight is a valid means of regulation. *United States v. Melendez-Carrion, supra,* 790 F.2d at 1002. It is entirely reasonable to conclude that a risk of flight is more likely in circumstances where evidence indicates that a defendant has engaged in terrorist activities and faces a substantial risk of being convicted of serious pending charges and receiving significant punishment.[4]

4. Camacho-Negron takes exception to the District Court's use of the term "terrorist," contend-

The detention of Gonzales Claudio is further supported by his use of a false name in connection with foreign travel, his appearance at a Los Macheteros safe house, and, marginally, by his use of evasive driving techniques. This last factor, however, may indicate no more than a reluctance to have his activities known, rather than a reluctance to attend a trial.

Appellants also contend that the District Court used an overly restrictive standard in considering whether any conditions of release would "reasonably assure" their presence at trial. They point to isolated instances in the District Court's rulings where a possible condition of release was rejected because it would not "prevent" flight or "secure" the defendant's presence. In his consideration of the utility of conditions of release, Judge Clarie made it abundantly clear that he was applying the statutory standard of whether conditions of release would "reasonably assure" the defendants' presence. The occasional use of language suggesting a more restrictive test does not indicate an abandonment of the correct standard, which was repeatedly articulated and applied in the rulings with respect to both appellants.

3. Since the District Court was entitled to consider whether the appellants should be detained on the ground of flight and reached a conclusion in favor of such detention that is not clearly erroneous, we confront the appellants' constitutional challenge that the duration of their pretrial detention has now exceeded constitutional limits. The Government does not dispute that at some point and under some circumstances, the duration of pretrial detention becomes unconstitutional. We have previously expressed the view that in some circumstances "the length of a defendant's pretrial detention might not survive a proper due process challenge." *United States v. Colombo*, 777 F.2d 96, 101 (2d Cir.1985)

(footnote omitted). In *Colombo* detention had lasted seven months. The Court reversed a release order that was based on the likelihood of further pretrial delay. The Court declined to decide at that time whether a substantial period of continued detention would violate the Constitution, viewing the issue as "speculative." *Id.* In *United States v. Melendez-Carrion, supra,* Chief Judge Feinberg expressed the view that detention lasting eight months was unconstitutional punishment when based on the ground of dangerousness, but was within constitutional limits when based on the ground of flight. 790 F.2d at 1009 (concurring opinion). The other members of the *Melendez-Carrion* panel did not adjudicate the issue of the duration of detention based on the ground of flight, since the defendants on that appeal had not challenged their detention on this ground. Detention on the ground of flight for eight months was explicitly upheld by this Court in *United States v. Berrios-Berrios, supra,* 791 F.2d at 252.

Other circuits have recognized that the length of pretrial detention raises a constitutional issue at some point, *United States v. Portes,* 786 F.2d 758, 768 (7th Cir.1986); *United States v. Accetturo,* 783 F.2d 382, 388 (3d Cir.1986). The Tenth Circuit has concluded that detention of four months was unlawful for a defendant denied a severance from co-defendants. *United States v. Theron,* 782 F.2d 1510 (10th Cir. 1986). Relying on statutory grounds, the Court recognized that the permissible periods of delay under the Speedy Trial Act, 18 U.S.C. § 3161(h), are to be excluded in determining whether that Act's ninety-day limit for trial of detained defendants has been violated, *id.* § 3164(b); however, the Court ruled that the "reasonable period of delay" permitted by section 3161(h)(7) where a defendant is denied a severance from those for whom the time for trial has

---

ing that "[o]ne person's 'terrorist' is often another person's 'freedom fighter.' " Brief for Camacho-Negron at 36 n. 4. That observation concerns motivation, not risk of flight. Whether or not acts of terrorism are committed to enhance the freedom of others, the perpetrators are act-

ing not only beyond the law, but beyond the pale of civilized conduct when they take innocent lives. Such conduct, whatever its motivation, is relevant in deciding whether its perpetrators are likely to have sufficient respect for law to attend their criminal trial.

not run is to be construed more strictly in determining the allowable length of pretrial detention under section 3164(b) than in determining the allowable time for the required start of a trial under section 3161. Two district court decisions in this Circuit have found pretrial detention lasting six months to have exceeded due process limitations. *United States v. LoFranco*, 620 F.Supp. 1324 (N.D.N.Y.1985); *United States v. Hall*, 651 F.Supp. 13 (N.D.N.Y. 1985).

In considering whether the duration of preventive detention in this case has exceeded constitutional limits, we note at the outset a distinction between those detained under traditional bail statutes because they cannot post a bail that has been set and those, like the appellants, detained under a preventive detention statute because bail has not been set. For the person without funds to obtain bail, the distinction may have little practical significance, but it is relevant to the constitutional issue. The amount of bail is subject to the Eighth Amendment limitation that it may not be "excessive." In the Bail Reform Act, Congress has given significant additional protection to defendants by prohibiting judicial officers from imposing "a financial condition that results in the pretrial detention of the person." 18 U.S.C. § 3142(c). The defendant detained for failure to post bail has some opportunity to obtain release, if not through his own resources, then at least with the help of family, friends, or even charities. Moreover, he has a constitutional, and now a statutory, limitation on the amount of bail. By contrast, the defendant subject to preventive detention has not even the prospect of obtaining release prior to trial on any conditions. For both types of defendants, liberty protected by the Fifth Amendment has been denied, but under some circumstances those without any opportunity to secure release might have a more substantial claim that fundamental fairness has been denied than those for whom bail has been set.

■ We agree with Chief Judge Feinberg that the due process limit on the dura-

tion of preventive detention "requires assessment on a case-by-case basis, since due process does not necessarily set a bright line limit for length of pretrial confinement." *United States v. Salerno, supra*, 794 F.2d at 78–79 (Feinberg, C.J., dissenting on other grounds). *See United States v. Accetturo, supra*, 783 F.2d at 388. Indeed, we believe that the due process issue is not to be resolved solely on the basis of the duration of pretrial confinement. Though at some point the length of confinement would exceed constitutional limits regardless of the circumstances, we think that in most cases likely to be encountered it is more consonant with due process jurisprudence to consider factors in addition to passage of time. Though the duration of confinement is obviously a central focus of our inquiry, we also consider the extent to which the prosecution bears responsibility for the delay that has ensued and the strength of the evidence indicating risk of flight.

■ Focusing first on the duration of confinement, we note that Congress expressed in the Speedy Trial Act a preference that the trial of incarcerated defendants should begin within ninety days after the start of detention. 18 U.S.C. § 3164(b). Indeed, in debate on the preventive detention provisions of the Bail Reform Act, the Senate was assured that ninety days is the "worst case limit," 130 Cong.Rec. S941 (statement of Senator Thurmond), and the "upper bound" of pretrial detention, *id.* at S943 (statement of Senator Laxalt). However, as we recognized in *Melendez-Carrion*, there can be no doubt that Congress understood that the periods of trial delay permissible under the Speedy Trial Act would extend the time of preventive detention authorized by the Bail Reform Act, although it may not have appreciated "just how long pretrial detention might last under the exclusions of the Speedy Trial Act." 790 F.2d at 996. Nevertheless, the ninety-day period specified in section 3164(b), representing the considered view of the Congress as to the normal limit on pretrial detention, provides at least a point of refer-

ence in our consideration of the constitutional limit on such detention.

In this case, the appellants had been confined for fourteen months when this appeal was heard. Their trial is now scheduled for March 3, 1987, eighteen months after detention began, and is estimated by the Government to last eight months. If the trial date is not postponed and the estimated trial length is not low, these appellants will remain in pretrial detention for two years and two months before the charges against them are determined by a jury. Detention that has lasted for fourteen months and, without speculation, is scheduled to last considerably longer, points strongly to a denial of due process. *See United States v. Zannino*, 798 F.2d 544, 548 (1st Cir.1986) (court assumes "that in many, perhaps most, cases sixteen months would be found to exceed the due process limitation on pretrial confinement").

We next consider the extent to which the prosecution bears some responsibility for the length of pretrial delay that has already occurred and the interval that is yet to occur before the trial will begin. Normally, this is a matter on which we would want specific findings by the District Court. Indeed, the Government contends that we should not resolve the constitutional issue without remanding to the District Court for such findings. We need not do so in this case, however, for two reasons. First, the significant length of time that pretrial detention has already lasted and is currently scheduled to last makes it appropriate to avoid further delays in the resolution of the appellants' constitutional claim, if the record fairly permits our doing so. Second, there are sufficient undisputed circumstances concerning the prosecution's responsibility for a portion of the pretrial delay to permit adequate consideration of this facet of the constitutional issue without additional fact-finding.

Inevitably a case involving twenty defendants and activities occurring over an extended period of time in widely separated locations will require more than the normal period of time for trial preparation by both the prosecution and the defense. *See* 18 U.S.C. § 3161(h)(8)(B)(ii) (number of defendants and nature of prosecution pertinent in determining if case is so complex as to justify "ends of justice" continuance under section 3161(h)(8)(A)). Those circumstances have been exacerbated in this case by the sheer volume of evidence collected by the Government. The evidence includes hundreds of audiocassettes of wiretaps, scores of videocassettes of surveillance, and thousands of pages of documents seized in more than 45 searches. Most of the wiretapped conversations and the documents are in Spanish. The District Court has ordered all of these wiretaps and documents translated into English.

In addition to complexity, one source of some delay appears to be the motion practice of defense counsel, who have filed more than 400 motions. The Government contends that many of these motions have been unnecessary, and the defendants assert that many have been precipitated by the Government's restrictive approach to disclosure and its inadequate compliance with disclosure rulings of the District Court. Without resolving this dispute as to each of the many motions filed, there is some basis for believing that defense counsel could have proceeded more expeditiously by taking a less fragmented approach to pretrial maneuvering.

We recognize that defendants cannot litigate pretrial matters to the ultimate degree and then rely on the extra time attributable to their motion practice to claim that the duration of pretrial detention violates due process. On the other hand, even normal defense pretrial activity would be time-consuming in a case involving so many defendants and so large a quantity of wiretapped and seized evidence.

For purposes of considering the due process issue posed by extensive pretrial detention, our focus is not merely on the total time the defendants have been in pretrial detention but also the extent to which the Government bears a significant responsibility for the duration of that detention. Ex-

amining the Government's share of responsibility for the pretrial delay, we note the following undisputed circumstances. The wiretapping was conducted over a two-year period from September 1983 until defendants' arrest on August 30, 1985. The Government began providing the defendants certified translations of audiotapes in December 1985, and the translation task was not completed until May 1986, nine months after the defendants were arrested and incarcerated. The translation of the seized documents, a task that could have begun at the time of the seizures on August 30, 1985, had not been completed within one year after detention began and has only recently been accomplished. The *existence* of the videotapes was not disclosed to the defendants until June 1986, ten months after detention began. Obviously some interval of time is required for the defendants and their counsel to examine these materials, both for trial preparation and for making challenges to the admissibility of such materials.

The Government suggests that the delays occasioned by translations are attributable to the defendants since they have "insisted" on translation of all tapes and documents, not just those the Government intends to use at trial. Brief for Appellee at 49. We find this argument unconvincing. The defendants are in no position to "insist" on anything. They have filed motions requesting complete translations, and the District Court has granted these motions. The District Court evidently concluded that pertinent legal standards entitled the defendants to have the translations they sought. The Government could have substantially shortened the time the translation task has taken by devoting sufficient resources to complete the task expeditiously.[5] Moreover, the need for translation of any Spanish-language materials arises from the Government's preference to indict the defendants in Connecticut, where it

could have been anticipated that most of the defense counsel would speak only English. The defendants have sought to have the trial transferred to Puerto Rico, where Spanish-speaking lawyers would not need translations, but the Government has opposed a transfer.

The Government's delay in disclosing the existence of the videotapes is inexplicable, especially in light of the defendants' prompt filing of motions under Fed.R. Crim.P. 16. At argument we were advised that the existence of the videotapes was not known to the prosecutors in Connecticut until June 1986, at which time the defendants were promptly notified. However, the Government does not dispute that its Rule 16 obligations extend to materials in the possession of its investigative agents in Puerto Rico who conducted the videotaping, *see United States v. Scruggs*, 583 F.2d 238, 242 (5th Cir.1978).

Finally, we note that the process of producing materials discoverable under Rule 16 has not yet been completed, even now, more than fourteen months after detention began. The District Court's latest scheduling order, issued October 31, 1986, directs the Government to disclose by November 21, 1986, "such evidentiary material which it has in its possession and upon which it *is* conducting certain laboratory or other examinations" (emphasis added). *See* Fed.R. Crim.P. 16(a)(1)(D) (production of results of physical examinations).

We need not determine with precision the amount of pretrial delay attributable to the prosecution, nor assess the extent to which the Government may have been at fault in contributing to the delay. It suffices for present purposes to conclude that the Government, even if not deserving of blame, bears a responsibility for a portion of the delay significant enough to add considerable weight to the defendants' claim that the duration of detention has exceeded

---

5. "In cases involving many hours of taped intercepted material, the government may have to arrange for swift and reliable transcription, by extraordinary means if necessary, before moving for detention or immediately after obtaining

it. Should the government be unwilling or unable to shoulder the cost of these procedures, pretrial detention may not be available." *United States v. Salerno, supra,* 794 F.2d at 79 n. 2 (Feinberg, C.J., dissenting on other grounds).

constitutional limits. *Cf. United States v. Zannino, supra,* 798 F.2d at 549 (long detention upheld where Government "has done all it could" to bring defendant to trial expeditiously and delay was primarily due to defendant's physical inability to stand trial).

Turning to the risk of flight, we start with the fact that an able and experienced District Judge has made a considered judgment that no conditions of release will reasonably assure the presence of these appellants at trial. We have upheld that factual determination, applying the narrow standard of review appropriate to our appellate function. However, though we have concluded that the District Judge's findings of underlying historical facts and the consequent factual determination of risk of flight are not clearly erroneous and we therefore accept them, we are entitled to apply a broader standard of review in determining the extent to which the facts regarding risk of flight, as found by the District Court, have significance on the constitutional issue of whether continued detention violates due process limitations. *See United States v. Zannino, supra,* 798 F.2d at 546; *cf. Sumner v. Mata,* 449 U.S. 539, 597 (1981) (federal habeas corpus court, accepting state court findings of fact, may give "different weight" to the facts and "may reach a different conclusion in light of the legal standard" on the constitutionality of identification procedures). In that inquiry, what is significant is the absence of any prior acts specifically evidencing likelihood of flight. There is no finding and no evidence that either appellant has ever fled from lawful authority, *cf. United States v. Maull,* 773 F.2d 1479, 1488 (8th Cir.1985) (in banc), or failed to honor court orders. The evidence relied on by the District Court concerned primarily the nature of the offense charged, the connection of the defendants to the offense, and their involvement with a terrorist organization. Although these circumstances provide a reasonable basis for inferring that the appellants might flee rather than attend their trial, they do not establish that risk to a degree sufficient to render contin-

ued detention within constitutional limits. Moreover, defendants' ties to the community, the starting point for assessing risk of flight, are strong.

Assessing the length of detention that has occurred and the non-speculative aspects of future detention, the extent to which the prosecution bears responsibility for the delay in starting the trial, and the facts concerning risk of flight, we conclude that the continued detention of Gonzales Claudio and Camacho-Negron beyond fourteen months would exceed even the flexible standards of due process. In reaching this conclusion we recognize that the release of these defendants upon reasonable conditions creates a risk that they may flee. We are not indifferent to that prospect. But the enforcement of all constitutional restraints upon government in its efforts to administer the criminal law entails risks. Occasionally such enforcement creates the risk that a person convicted of crime may escape punishment. In this case the enforcement of due process limits upon the duration of preventive detention creates the risk that a person accused of crime may avoid a trial that might result in conviction and punishment. That risk is serious, but of at least equal gravity is the preventive detention for fourteen months of defendants who are presumed innocent and whose trial to determine guilt or innocence will not even begin until detention has lasted eighteen months. In mandating fundamental fairness, the Due Process Clause endeavors to set outer limits at which risks to society must be accepted to avoid unconscionable deprivations of the liberty of individuals.

The detention orders of the District Court are vacated, and the case is remanded for the prompt setting of reasonable conditions of release in accordance with 18 U.S.C. § 3142(c). In view of the acute relevance of the passage of time to the merits of the issue presented, we exercise our discretion under Rule 41(a) of the Federal Rules of Appellate Procedure to shorten the time for issuance of the mandate to five days from the date of this decision, an interval sufficient to enable the Govern-

ment, if it is so advised, to seek a stay of mandate from the Supreme Court.

Vacated and remanded; issuance of mandate expedited.