**UNITED STATES of America, Plaintiff,**

v.

**Augusto Guillermo FALCON, Defendant.**

**No. 88–327–CR.**

United States District Court,
S.D. Florida.

April 19, 1996.

Michael Patrick Sullivan, Christopher Clark, Asst. U.S. Attys., Miami, FL, for Plaintiff.

Albert J. Krieger, L. Mark Dachs, Miami, FL (Scott A. Srebnick, of counsel), Miami, FL, for Defendant.

### ORDER DENYING DEFENDANT'S MOTION FOR REVOCATION OF PRE–TRIAL DETENTION

MARCUS, District Judge.

THIS CAUSE comes before the Court upon the Defendant's Motion for Revocation of Pretrial Detention Order and for Admission to Bail, filed March 18, 1996. After a thorough review of the record and pleadings, and for the reasons stated below, the Defendant's motion for revocation of pretrial detention Order is DENIED.

I.

On May 12, 1988, a federal grand jury in the Southern District of Florida returned a six-count indictment, charging the Defendant with making a false statement on an application for the acquisition of a firearm in violation of 18 U.S.C. § 922(a)(6) (Counts I, III and V), and receipt of a firearm by a convicted felon in violation of 18 U.S.C. § 922(h)(1) (Counts II, IV and VI).[1] These charges

---

1. On March 12, 1996, the Defendant moved to dismiss the indictment based on the Government's alleged violation of the speedy trial guarantee of the Sixth Amendment. In a separate Order issued on this date, the Court has denied the Defendant's motion.

relate to conduct alleged to have taken place in 1983 and 1984. Also pending against Falcon is a superseding indictment, issued by a federal grand jury in the Middle District of Florida on July 19, 1990, that charges the Defendant with participation in a money laundering conspiracy (the "Jacksonville case").[2] On April 11, 1996, a federal grand jury in this District returned an additional four-count indictment against Falcon, charging him with firearms offenses in violation of 26 U.S.C. §§ 5861(i) and 5871 (Count I), 18 U.S.C. § 922(k) (Count II), 922(g)(1) (Count III) and 922(g)(2) (Count IV). Case no. 96–6055–CR–GONZALES.

The Defendant has been incarcerated on pre-trial detention since his apprehension on or about October 16, 1991. On that date, Falcon was arraigned on charges embodied in a 24–count indictment issued by a federal grand jury in this District on April 10, 1991 (the "drug case"). This indictment charged the Defendant, among others, with multiple narcotics offenses. On January 16, 1996, after a four month trial, the jury acquitted the Defendant of these offenses.

On the next business day (February 20, 1996) the Defendant appeared for a bond hearing before United States Magistrate Judge Linnea R. Johnson. On February 20th and 21st, the Magistrate Judge conducted an evidentiary hearing and took argument from counsel. After considering the factors enumerated in 18 U.S.C. § 3142, Magistrate Judge Johnson, in a written Order dated March 7, 1996, denied Falcon's application to end his pre-trial detention, holding that the record supported the Government's argument that Falcon would be a flight risk if released on bond. In her findings of fact, the Magistrate Judge identified the pending

charges against Falcon.[3] Detention Order, at 1–2. She then found the weight of the evidence against the Defendant in the case at bar to be substantial:

> In regard to Case No. 88–327–Cr–Marcus, the Government evidence is that on May 16, 1983, May 20, 1983, June 1, 1983, January 9, 1984 and January 13, 1984, the Defendant received firearms and/or acquired firearms unlawfully as a convicted felon. The Government evidence is based upon documents filled out by the Defendant stating at the time of the firearm purchases and/or receipts that he was not a convicted felon. Fingerprint and/or handwriting evidence links the forms to the Defendant before the Court. State court records reveal at the relevant time period, the Defendant had been convicted of conspiracy to sell cocaine.

*Id.* at 2.[4]

After reviewing the record evidence concerning the history and characteristics of the Defendant, Magistrate Judge Johnson noted that Falcon has been in the Southern District of Florida for many years, and has strong family ties to the area. *Id.* at 2–3. She also made the following findings that are highly probative on the issue of flight:

> Falcon has a prior state narcotics conviction. While on bond in 1988, [he] fled the jurisdiction. While on bond the Defendant engaged in drug activities in California which led to his arrest there. It is noteworthy that when arrested, Falcon was in possession of a firearm and was using an alias name. In 1988, while a fugitive, Falcon offered a bribe to a detective to avoid his arrest. When arrested in 1991, Falcon possessed false identification documents and court documents relative to the then-

---

**2.** On April 16, 1996, the Government moved to dismiss this indictment. *See* Defendant's Second Supplemental Memorandum in Support of Admission to Bail, filed April 18, 1996.

**3.** The Magistrate Judge's Order was issued before the return of the April 11, 1996 indictment in this District and the United States' motion to dismiss the Jacksonville indictment.

**4.** The March 7th Order contained the following additional findings concerning the evidence in the Jacksonville case:

> In regard to [the Jacksonville case], the Government evidence is that between 1979 and

1981 the Defendant regularly engaged in narcotics trafficking and imported over 35,000 kilograms of cocaine into the United States. Numerous Government witnesses will testify that Falcon laundered some two million dollars in deposits through KS & W, a St. Augustine boat outfitter and repair shop. Various Government witnesses or employees of KS & W made regular deposits under $10,000 into the checking account of KS & W. The alleged structuring exceeds $100,000 in a twelve-month period.

The Government witnesses who will testify as to these events are corroborated by bank records.

pending drug case. The Defendant evaded capture while renting expensive homes in nominee names. According to the Government evidence, Falcon has been a successful large-scale narcotics trafficker for years, having millions of dollars hidden away.

*Id.* at 3. In light of these findings, the Magistrate Judge concluded that "[b]ased on the Defendant's previous flight to avoid prosecution, use of alias names and possession of false identification documents, the [Defendant] would not appear if released on bond prior to trial." *Id.* (citing 18 U.S.C. § 3142(g)(3)(A), (B)). She also concluded that there were no conditions or combination of conditions that could ensure the Defendant's appearance. *Id.* (citing 18 U.S.C. § 3142(e)). For these reasons, Magistrate Judge Johnson ordered Falcon to remain on pre-trial detention.

██ The Defendant has moved to revoke the Magistrate Judge's Order. According to Falcon, there are a combination of conditions that could be imposed to ensure his appearance at trial. Moreover, he asserts, further incarceration as a pretrial detainee would violate his rights under the Due Process clause of the United States Constitution. The Government filed a response on March 25, 1996, asserting that the Magistrate Judge correctly found that Falcon was a flight risk, and further arguing that he also is a risk to the community due to his persistent drug trafficking activities and the likelihood that he will attempt to obstruct justice. The Defendant replied on March 26, 1996, and the Court took argument on the motion at the status conference on April 2, 1996. Our review of the Magistrate Judge's Order of pretrial detention is plenary and de novo. *See* 18 U.S.C. § 3142; *United States v. Hurtado,* 779 F.2d 1467, 1471 (11th Cir.1985).

## II.

██ Section 3142(g) identifies the factors that a Court must consider in evaluating a request for revocation of pre-trial detention:

(g) Factors to be considered.—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—

(1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g). Having engaged in a de novo review of the record, and having considered the arguments of counsel, we agree with the factual findings contained in the Magistrate Judge's March 7, 1996 Order.[5] Moreover, the Court finds that the Government has met its burden of proving that Falcon is a risk of flight, and that there are no conditions of release that would guarantee the Defendant's appearance. *Cf. United States v. Quartermaine,* 913 F.2d 910, 917 (11th Cir.1990) (noting that a defendant's

---

**5.** The Defendant has challenged the Magistrate's finding that Falcon offered a bribe to law enforcement officers in the course of a 1988 arrest. According to the Defendant, it was Falcon's co-Defendant in the drug case (Salvador Magluta) who allegedly offered the bribe. Def.Mot. for Rev. of Pretrial Deten., at 14 (citing Tr. of Bond Hearing at 18). The Government fails to address this point in its response. While the Defendant's correction appears to reflect the record, the Magistrate Judge's other factual findings clearly establish a risk of flight.

risk of flight need only be proved by a preponderance of evidence).

In reaching this conclusion, we emphasize our concern with the Defendant's previous flights from justice. The record establishes that Falcon was convicted for drug trafficking before the Dade Circuit Court in 1979. He was sentenced to serve 14 months imprisonment. He was then released on bond while he appealed his conviction and sentence, and ordered to report to begin service of the sentence in 1988. Despite this Order, Falcon failed to appear for incarceration, as a result of which his bond was revoked and he was declared a fugitive. While he was on bond, in October of 1985, Falcon was arrested in Los Angeles for a separate drug trafficking offense. At the time of his arrest, Falcon apparently gave the local police a false name. He was then released on bond under this false name. Once again, however, Falcon failed to appear, this time for a probable cause hearing before a California state court. Falcon was declared a fugitive, and his bond revoked.

The Defendant remained a fugitive while three additional indictments were returned against him: (1) the gun charges at issue in this case; (2) the money laundering charge at issue in the Jacksonville case; and (3) the drug charges tried before Judge Moreno. The Defendant's fugitive status did not end until October 16, 1991, when state and federal agents apprehended him living under a false name in Fort Lauderdale. This uncontradicted course of conduct constitutes powerful evidence that Falcon is a serious risk of flight. In light of his background, the Defendant's suggestion that "it is irrational to believe that [he] would assume a false name or seek to flee the jurisdiction" is untenable.

■ The Defendant places a great deal of emphasis on the nature of his ties to South Florida, and the willingness of friends and family members to guarantee Falcon's appearance at trial. While this evidence is surely relevant, when examined alongside the Defendant's previous instances of flight and his extended period as a fugitive of justice, the evidence is not persuasive. The charges that Falcon must confront are serious, and give him a powerful incentive to flee this District.[6] Moreover, the evidence establishes that Falcon has the financial wherewithal to facilitate a successful flight. Thus, on this record, and under these facts and circumstances, we do not believe that Falcon's ties to South Florida—or the stringent conditions that he suggests would ensure his appearance—are sufficient to offset the impact of evidence that Falcon has jumped bond on two occasions and remained a fugitive from justice for over 43 months on the firearms crimes alleged in the instant indictment.

■ As an additional argument for revocation of his pre-trial detention, the Defendant insists that his continued incarceration violates the Due Process clause of the federal Constitution. A few courts have recognized that, in some situations, a pre-trial detention might offend Due Process. *See, e.g., United States v. Ojeda Rios,* 846 F.2d 167, 169 (2nd Cir.1988) (noting that Due Process does not "set a bright-line limit for the length of the pretrial confinement"); *United States v. Accetturo,* 783 F.2d 382, 388 (3d Cir.1986). We do not agree, however, that under the facts and circumstances of the present case the continued incarceration of Falcon is unconstitutional. Of paramount importance, the Defendant has been held on pre-trial detention on the charges contained in the *instant* indictment (as opposed to drug indictment on which he went to trial) for less than two months. Indeed, the Government has agreed to the Defendant's request to expedite proceedings in this case, enabling the Court to set a trial date of May 6, 1996. Moreover, the length of time that Falcon

---

**6.** The parties do not disagree that Falcon potentially faces a substantial maximum sentence if convicted on all of the gun charges contained in this indictment. The Defendant believes that, if this Court were to look to the United States Sentencing Guidelines in imposing sentence, Falcon should be given a term of imprisonment of 46-to-57 months. The Government counters that, even if the Court were to base its sentence on the Guidelines, an upward departure would be warranted in light of Falcon's criminal history. At all events, the Defendant's potential exposure on these charges, along with his possible exposure on the four firearms offenses charged in the April 11th indictment, underscore the seriousness of the allegations against him and the risk of flight.

spent on pre-trial detention on the drug charges (52 months) was in large part a product of his own decision to seek repeated continuances of the district court's trial setting. *See* Order Denying Defendant's Motion to Dismiss (April 19, 1996) at 9.[7] In addition, as Falcon acknowledges, evidence concerning risk of flight is relevant to our constitutional inquiry. *See* Def.Mot. for Rev. of Pretrial Deten., at 16 (citing *United States v. Gonzales Claudio*, 806 F.2d 334, 343 (2nd Cir.1986) (reversing pretrial detention order after explaining "what is significant is the absence of any prior acts specifically evidencing a likelihood of flight")). For all of the foregoing reasons, we are not persuaded that Falcon's detention as the firearms case unfolds offends Due Process.

The Defendant's reliance on the Second Circuit's opinion in *Ojeda Rios* is misplaced. In that case, the Court of Appeals directed the district court to release (subject to conditions) a defendant who had been in pretrial confinement for 32 months. The district court had found that the defendant—a member of a Puerto Rican terrorist group—posed a risk of flight and also represented a danger to the community. In a brief per curiam opinion, the Second Circuit reversed, noting that "it now appears . . . that the case cannot be reached for trial before next fall at the earliest and that even when reached it will take many months to try." 846 F.2d at 169. Nevertheless, the panel stressed that "[w]e make this decision solely on the facts of the instant case, without attempting to set a bright-line precedent for future cases." *Id.* Here, Falcon has been on pre-trial detention on the instant charges for less than two months, and the trial setting is within three weeks.[8] Moreover, there is no indication in *Ojeda Rios* that the defendant was a fugitive from justice, or had jumped bond on even one—let alone *two*—prior occasions. At all events, we do not believe that *Ojeda Rios* mandates Falcon's admission to bail.

To summarize, therefore, this Court, having made a de novo review of the record and taken additional argument from the parties, agrees with the Magistrate Judge's findings of fact and conclusions of law, and finds that the Government has shown by a preponderance of evidence that (1) the Defendant poses a serious risk of flight and (2) no condition or conditions of release would ensure his appearance as required. 18 U.S.C. §§ 3142(e) and (g)(3)(A), (B). Because the Court finds that Falcon's continued pretrial detention is warranted on this basis, we decline the Government's invitation to address its alternative argument that Falcon's incarceration is needed to prevent harm to the community and/or prevent an obstruction of justice. *See* 18 U.S.C. §§ 3142(g)(4) and (f)(2)(B).

Accordingly, it is hereby

ORDERED AND ADJUDGED that the Defendant's Motion for Revocation of Pretrial Detention and for Admission to Bail is DENIED. The Defendant shall remain on pretrial detention until further Order of Court in accordance with the Magistrate Judge's Order of March 7, 1996.

It is further ORDERED AND ADJUDGED:

(1) That the Defendant be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practical, from persons awaiting

---

**7.** In this Order, the Court documented the Defendant's role in the slow progress of the drug prosecution:

> [Falcon's] arraignment took place . . . on October 16, 1991. The case was then assigned to United States District Judge Federico A. Moreno. Thereafter, the Defendant moved for a trial continuance until November of 1992, again for a continuance of trial from October 19, 1992 until April 19, 1993 and still again (on December 11, 1992) sought a continuance of the April 1993 setting, all of which the Court granted. On September 29, 1993, the Defendant again moved to continue the drug trial. Judge Moreno denied the application, but, on

> September 30, 1993, granted a defense motion to suppress evidence, prompting an interlocutory appeal by the Government and resulting in an extensive delay of the trial proceedings while the matter was pending before the Court of Appeals. The Eleventh Circuit issued its Order on the interlocutory appeal on February 21, 1995, at which time the district court set the drug case for trial on October 16, 1995. Thereafter the Defendant sought still another continuance. After more than four months of trial, a jury acquitted the Defendant . . . on February 16, 1996.

**8.** The parties estimate that the trial will take no more than 3–5 days to complete.

or serving sentences or being held in custody pending appeal;

(2) That the Defendant be afforded reasonable opportunity for private consultation with counsel; and

(3) That, on order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the Defendant is confined deliver the Defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding. 18 U.S.C. § 3142(i).

DONE AND ORDERED.