UNITED STATES of America, Plaintiff,

v.

Cesar GONZALES, et al., Defendants.

No. CR. 95–538 MV.

United States District Court,
D. New Mexico.

March 13, 1998.

Thomas English, Asst. U.S. Atty., Albuquerque, NM, for plaintiff.

Natman Schaye, Tucson, AZ, Ray Twohig, Albuquerque, NM, Jeffrey Buckels, Albuquerque, NM, for defendants.

### *MEMORANDUM OPINION AND ORDER*

VAZQUEZ, District Judge.

THIS MATTER is before the Court on Defendant Jason DeLaTorre's Appeal of Detention Order and Motion for Pretrial Release, filed December 2, 1997 [**Doc. No. 2140**], and Motion to Strike Portion of Prosecution's Response to Appeal of Detention Order and Motion for Pretrial Release, filed January 5, 1998 [**Doc. No. 2158**]. The Court, having fully considered the pleadings, testimony, and relevant law, finds that the motion for pretrial release is not well **taken and** will be **denied,** and that the motion to strike consequently will be **denied as moot.**

## Background

Following Jason DeLaTorre's arrest in mid-October 1995, Magistrate Judge Svet ordered him detained, finding probable cause that Mr. DeLaTorre had engaged in a conspiracy to violate 21 U.S.C. § 846, the conspiracy statute. In support of this finding Judge Svet cited evidence that he found to be credible that Mr. DeLaTorre was a member of a gang, one of whose purposes was to traffick in crack cocaine. Judge Svet also found that Mr. DeLaTorre represented a danger to the community because of the type of drug he was charged with trafficking, his possession of a firearm, and the evidence of violence as reflected by an attempted murder on August 1, 1995, in which Mr. DeLaTorre was one of the suspects. Lastly, Judge Svet found that Mr. DeLaTorre was a flight risk because of the transient nature of his moving from house to house, his primary residence in the Los Angeles area, and his lack of close ties to relatives.

Since that arrest and detention, the Government charged Mr. DeLaTorre in a third superseding indictment with multiple counts of conspiracy to distribute cocaine base, racketeering, murder and attempted murder. The Government has also filed a notice of its intent to seek the death penalty for the murder of Edward Sandoval, one of the crimes the Government alleges Mr. DeLaTorre committed. If convicted, then, Mr. DeLaTorre potentially faces severe penalties, up to and including the death penalty. Mr. DeLaTorre now raises challenges to his detention under both the Bail Reform Act, 18 U.S.C. § 3142, and substantive due process protections afforded by the United States Constitution.

In his motion, Mr. DeLaTorre proposes various possible sites and conditions of release. The locations for in-house detention which Mr. DeLaTorre suggests are a halfway house in Albuquerque, one of his attorneys' homes in Albuquerque or Tucson, Arizona, and the home of Rick and Keiko Moore in Chino Hills, California, long-time friends of the DeLaTorre family.

Mr. DeLaTorre has also proposed release conditions such as house arrest, electronic monitoring, regular searches, daily reports to pretrial Services, random drug and alcohol tests, counseling, employment and schooling, a prohibition against any contact with former friends or acquaintances, and abstinence from alcohol and drugs. Lastly, Mr. DeLaTorre's family has offered to post virtually all its property, and Keiko and Rick Moore have pledged all their retirement savings, as a guarantee of his appearance.

The Court held an evidentiary hearing on this motion on January 19, 1998. Apparently because the Government did not notify the family members of Mr. DeLaTorre's alleged victims of the Court's hearing, after seeing a news account of this hearing the father of one victim contacted the Government to express concern for his family's safety. In a supplemental pleading, Government counsel communicated these concerns to the Court and Mr. DeLaTorre's attorneys.

## Discussion

### I. The Bail Reform Act Challenge

■ Although this matter is before the Court on Defendant Jason DeLaTorre's motion for release pending trial, the Government bears the burden of showing by clear and convincing evidence that "no condition, or combination of conditions will reasonably assure the safety of any other person and the community." *United States v. Nichols,* 897 F.Supp. 542, 544 (W.D.Okla.1995), *aff'd,* 61 F.3d 917 (10th Cir.1995), *citing United States v. Salerno,* 481 U.S. 739, 742, 752, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). In the alternative, the Government may prove by a preponderance of the evidence that Mr. DeLaTorre poses a risk of flight. *Nichols* 897 F.Supp. at 544, *citing United States v. Gebro,* 948 F.2d 1118, 1121–22 (9th Cir.1991); *United States v. Carlos,* 777 F.Supp. 858, 860 (D.Kan.1991); *see also United States v. Quartermaine,* 913 F.2d 910, 915 (11th Cir. 1990). The factors the Court must consider in determining whether there are conditions of release that will reasonably assure the appearance of a defendant at trial and the safety of the community include:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

    (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

    (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g) (1997).

Within this controlling statutory scheme, the Tenth Circuit has explained the relative burdens on the parties, stating that where there is

probable cause that a defendant has committed a federal drug offense carrying a maximum prison term of ten years or more, a rebuttable presumption arises that no conditions of release will assure [the] defendant's appearance and the safety of the community. Once the presumption is invoked, the burden of production shifts to the defendant. However, the burden of persuasion regarding the risk-of-flight and danger to the community always remains with the government. The defendant's burden of production is not heavy, but some evidence must be introduced. Even if a defendant's burden of production is met, the presumption remains a factor for consideration by the district court in determining whether to release or detain.

*United States v. Stricklin,* 932 F.2d 1353, 1354–55 (10th Cir.1991), *citing United States v. Cook,* 880 F.2d 1158, 1162 (10th Cir.1989); 18 U.S.C. § 3142(e).

The indictment is sufficient to establish a finding of probable cause, *Stricklin,* 932 F.2d at 1355, and the Court finds that Mr. DeLaTorre has met his burden of production. The witnesses Mr. DeLaTorre presented on his behalf were earnest and credible. The Court also finds, however, that the Government has met its burden of persuasion, and that because of the risk of flight in this case the presumption counsels against Mr. DeLaTorre's release.

### Findings of Fact

With respect to the first statutory factor, the Government is prosecuting Mr. DeLaTorre on multiple counts of conspiracy to distribute cocaine, racketeering, and murder. Mr. DeLaTorre therefore is charged both with crimes of violence and with crimes that involve narcotic drugs.

The Government's case consists primarily of testimony of former alleged fellow gang members and co-defendants of Mr. DeLaTorre's. In addition, however, the Government has proffered the testimony of witnesses who can corroborate Mr. DeLaTorre's participation in the gang and its discussions of drug sales and violence, presence at the scene of shootings and in vehicles from which shootings occurred. The Government also has tangible evidence, in the form of photographs and wiretaps, of Mr. DeLaTorre's gang affiliations.[1]

The Court received evidence regarding Mr. DeLaTorre's history and characteristics. Mr. DeLaTorre has neither a criminal record nor a history of drug and alcohol abuse. He has significant family ties to California. Mr. DeLaTorre was born in California, as were his parents, grandparents, and great-grandparents. His parents, siblings and extended family continue to reside in the greater Los Angeles area. In addition, Mr. and Mrs. Rick Moore are life-long family friends with strong ties to the region and the DeLaTorre family.

On the other hand, the Court has reservations due to the fact that at the time of his

---

1. The Court recites and uses this proffered evidence only to evaluate the likelihood that Mr. DeLaTorre will fail to appear. This least important factor under the Act is not, nor can it be, a pretrial determination of Mr. DeLaTorre's innocence or guilt. *United States v. Winsor,* 785 F.2d 755, 757 (9th Cir.1986), *see also United States v. Cardenas,* 784 F.2d 937 (9th Cir.1986).

arrest, in October 1995, Mr. DeLaTorre had very little contact with his mother, who had been awarded physical custody of Jason when she was divorced from his father. Mr. DeLaTorre's father also had little information on his son's whereabouts during this period of time. Jason, who left his home when he was 17 years old, traveled without his parents back and forth between California and New Mexico. When in New Mexico prior to his arrest, Mr. DeLaTorre moved from house to house, staying with friends and making no contribution to rent or other expenses. Mr. DeLaTorre claims to have been unemployed from May, 1995 to the time of his October arrest.

Mr. DeLaTorre has brought forth evidence of a very strong commitment from his family and friends. Mr. DeLaTorre has demonstrated to the Court a willingness on the part of his immediate family and some family friends to post substantially all of their property as a means of ensuring that he will appear for trial, and of providing an environment designed to maximize the likelihood of this appearance. Indeed, members of his family have great faith in him and would risk all their property to obtain his pre-trial release. Family friends Keiko and Rick Moore stand ready to pledge all their retirement savings, and to act as guardians by having Mr. DeLaTorre remain in their home under strict conditions of release pending trial. These are substantial and considerable assurances.

### Risk of Flight

■ In this unusual case, the Court navigates uncharted waters with little guidance from the Act or its construing case law. The most salient aspects of Mr. DeLaTorre's challenge to his pretrial detention are the violent nature of many of the alleged crimes, but most importantly the Government's seeking of the death penalty. The Act, of course, makes no mention of the death penalty in directing courts on the calculus to apply in deciding pretrial release. Indeed, nothing in the Act states that a death-eligible defendant can not meet conditions of such release. However, it is precisely this possibility of the

ultimate penalty that convinces the Court of Mr. DeLaTorre's strong incentive to flee prior to trial. The potential for this penalty may indeed make irrebuttable the rebuttable presumption that Congress expressly provided for in the Act, *see United States v. Paterson,* 780 F.2d 883, 888 (10th Cir.1986) (McKay, J. dissenting), yet although the Court concludes that under the statutory requirements Mr. DeLaTorre might be otherwise eligible for supervised release under rigorous conditions, the risk of flight, as a direct result of the penalty Mr. DeLaTorre faces, is too great to allow him the limited freedom of an in-house detention.

The Court finds by a preponderance of the evidence that Mr. DeLaTorre represents a risk of flight. The first statutory factor, the nature and circumstances of the offenses charged, involves crimes of violence and narcotics offenses and suggests a denial of Mr. DeLaTorre's motion. The Government's case is not inconsequential. However, it is the lengthy prison sentence or the imposition of the death penalty if the trial results in conviction that provides Mr. DeLaTorre a great incentive to flee, *Nichols,* 897 F.Supp. at 547, *citing United States v. El–Gabrowny,* 35 F.3d 63, 65 (2nd Cir.1994), and predominates in this Court's view. Despite the Court's determination that other statutory factors point in favor of release, the Court cannot escape the conclusion that the death penalty element present here makes release impossible.

Other statutory conditions favor release. Mr. DeLaTorre has no prior criminal record[2] and no history of drug or substance abuse. While his lack of close ties to New Mexico gives the Court pause, his ties to his home state of California are strong. His father and mother, as well as immediate and extended family, reside there. In addition, Mr. DeLaTorre's family and friends have made an impressive showing of support and offered significant assurances that he will appear for trial. It is clear that absent the severe and violent charges alleged, the potentially long prison time involved, and, most

---

2. The Court notes that Mr. DeLaTorre's past is not completely blemish-free. In a state court charge related to the present case, alleging trafficking in a controlled substance and conspiracy, the court issued a bench warrant for Mr. DeLaTorre's arrest after a notice of arraignment was returned undelivered. Jason DeLaTorre had not informed the court of his change of address.

importantly, the existence of the death penalty element in this case, the Court could be swayed by these other factors to allow in-house detention pending trial.

In contemplating release possibilities, the Court most favorably considered in-house detention at the home of Keiko and Rick Moore in California. The Court rejected the Albuquerque halfway house and the home of one of Mr. DeLaTorre's parents as being too close to his former neighborhoods either in Albuquerque or California. Because of potential conflict of interest issues, the Court also rejected placing Mr. DeLaTorre with one of his attorneys in Tucson. The Moore home in Chino Hills, therefore, seemed the best possibility for in-house detention. Yet even the strict conditions the Court would impose surrounding Mr. DeLaTorre's release there can not reasonably assure that he will appear for trial.

Although suggested conditions of release include 24–hour electronic monitoring, the Court fears that Mr. DeLaTorre could leave the home at night or other time when his guardians would be unsuspecting. The most secure means of assuring Mr. DeLaTorre's continued presence in the Moore home, strict electronic monitoring through the use of an ankle bracelet, is not secure enough under the circumstances. *See Nichols,* 897 F.Supp. at 547. No one has proposed, and indeed it is unclear whether anyone reasonably can assure, a detention option that provides for 24–hour personal monitoring in addition to the electronic monitoring that the Court would impose. Accordingly, even the assurances that Mr. DeLaTorre's family and friends present on his behalf are not sufficient to overcome the presumption that Mr. DeLaTorre, faced with very serious charges and the possibility of the death penalty, presents a risk of flight.

## II. The Constitutional Challenge

■ Based solely on the length of his detention and the expected wait for trial, Mr. DeLaTorre asserts that the Court should order him released pending trial. At the time of this writing, Mr. DeLaTorre has been incarcerated for approximately 28 months. Because of pending appeals to the Tenth Circuit of pre-trial matters, there is uncertainty as to when Mr. DeLaTorre's case can

be tried. The Government asserts that trial could happen as early as April 1998. Mr. DeLaTorre's counsel suggests that a trial could still be as much as two years away. The Court is neither as optimistic as the Government nor as pessimistic as defense counsel. The Court expects that trial will likely occur in early fall or winter of this year. As such, by the time he presents his defense, Mr. DeLaTorre will have been incarcerated for approximately 35 to 37 months.

■ There are no bright lines for determining the constitutional limits on the length of time that the government may detain a person pending trial. *United States v. Ojeda Rios,* 846 F.2d 167, 169 (2nd Cir.1988). In their case by case determination of this pretrial detention issue, *United States v. Gonzales Claudio,* 806 F.2d 334, 340 (2nd Cir. 1986), *cert. dismissed sub nom. Melendez–Carrion v. United States,* 479 U.S. 978, 107 S.Ct. 562, 93 L.Ed.2d 568 (1986), courts should not look at length of detention, without more, to determine due process issues, *United States v. Orena,* 986 F.2d 628, 630–31 (2nd Cir.1993), *United States v. Infelise,* 934 F.2d 103, 104 (7th Cir.1991), but should instead weigh the length of detention, the extent to which the prosecution is responsible for the delay of trial, and the strength of the evidence upon which detention was based. *Gonzales Claudio,* 806 F.2d at 341–43; *Orena,* 986 F.2d at 630; *United States v. Millan,* 4 F.3d 1038, 1043 (2nd Cir.1993), *cert. denied,* 511 U.S. 1006, 114 S.Ct. 1375, 128 L.Ed.2d 51 (1994). In Mr. DeLaTorre's case, there is no doubt that detention by the time of trial will have been lengthy. Case law has shown that such a long delay between arrest and trial may stretch the limits of due process guarantees. For example, the *Ojeda Rios* court considered a thirty-two month delay, with an additional several months before completion of trial, impermissible. *Ojeda Rios,* 846 F.2d at 168–69. The Seventh Circuit has stated that a three to four year detention before judgment is an extraordinary period. *Infelise,* 934 F.2d at 105. Clearly, then, the length of time Mr. DeLaTorre has been incarcerated and will remain so until his trial can begin presents significant due process concerns.

Nevertheless, other considerations mitigate against finding a due process violation and releasing Mr. DeLaTorre pending trial. The Government recognizes that it is not entirely blameless with respect to delays. However, Mr. DeLaTorre points only to two Government interlocutory appeals in this matter as supporting his delay argument. The Government filed the two pertinent appeals on August 8 and October 17, 1997. Given the complexity of this case and the number of defendants originally indicted, the Court cannot say that these appeals represent delay for which the Government bears responsibility significant enough to have added "considerable weight to [D]efendant's claim that the duration of detention has exceeded constitutional limits." *Gonzales Claudio,* 806 F.2d at 342–43. Certainly, the Government has the right to challenge this Court's evidentiary rulings. Moreover, Mr. DeLaTorre cannot rely on the time delay occasioned by his own motion practice "to claim that the duration of pretrial detention violates due process." *Id.* at 341.

Lastly, in looking at the evidence upon which detention is based, particularly Mr. DeLaTorre's risk of flight, the Court concludes that the risk of flight supports the determination that Mr. DeLaTorre's lengthy detention does not violate due process. Mr. DeLaTorre's ties with the community, "the starting point for assessing risk of flight," *id.* at 343, are strong with respect to California. Yet the Court has concern that Mr. DeLaTorre, facing serious charges and penalties, would flee even with the strict conditions the Court would impose upon release.

In sum, the Court concludes in its evaluation of the due process factors that constitutional limits on pretrial detention have not been exceeded. Despite the considerable length of time Mr. DeLaTorre will have been deprived of his freedom, in this complex case the Government bears no such responsibility for delay as to mandate release, and the Court has found that Mr. DeLaTorre's presents a risk of flight. Accordingly, in balancing Mr. DeLaTorre's due process interest with the risks society must accept, *id.,* the Court finds that the time has not yet come when Mr. DeLaTorre's continued detention arises to a constitutional violation of his substantive due process rights.

**THEREFORE,**

**IT IS HEREBY ORDERED** that Defendant Jason DeLaTorre's Appeal of Detention Order and Motion for Pretrial Release, filed December 2, 1997 [**Doc. No. 2140**] be, and hereby is, **denied.**

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike Portion of Prosecution's Response to Appeal of Detention Order and Motion for Pretrial Release, filed January 5, 1998 [**Doc. No. 2158**] be, and hereby is, **denied as moot**